Michael A. Castaldi, J.
Plaintiff’s motion (No. 21) and defendant’s cross motion (No. 22) have been considered together. Each party seeks summary judgment against the other.
The material facts that gave rise to this controversy are not in dispute. In sequence, this is what occurred.
On September 13, 1966, one Edward I. Chirlin, who maintained an account at a branch of defendant bank, made out a check in the sum of $2,000 payable to the order of one Markowitz. Chirlin thereupon caused the check to be certified by the bank.
On October 7, 1966 plaintiff recovered a judgment against Chirlin in the amount of $13,197.10.
*1054 On October 10, 1966, plaintiff served a restraining notice on the branch of the defendant bank where Chirlin maintained his account, A copy of the notice thus served in the form prescribed by CPLR 5222 is annexed to the moving papers.
On the same day — October 10, 1966 — the assistant manager of defendant’s branch bank wrote to Chirlin advising him that his account at the bank had been attached with the restraining notice and that: ‘ ‘ Accordingly, we are unable to honor any further checks drawn against your account.”
On the following day — October 11, 1966 — Chirlin went to the main office of the defendant bank, and presented the previously certified check for $2,000 which was still in his possession. Chirlin sought to have the check cancelled and receive cash therefor. To accomplish his purpose, Chirlin was advised by one John W. Beattie, an employee of the bank, to indorse the certified check with the legend “Not used for the purpose intended.” The check was thereupon redeposited to the credit of Chirlin’s account; simultaneously Chirlin drew another check to his own order for $2,000; the check was immediately cashed and Chirlin was thus able to obtain $2,000 from his account. Beattie states that before permitting the transaction in question he telephoned the branch of defendant’s bank where Chirlin maintained his account and that he (Beattie) “ was advised that the account was free.”
On November 4, 1966, pursuant to a Sheriff’s levy and execution, defendant remitted to the Sheriff the sum of $432.11 as the purported balance remaining in Chirlin’s account.
There followed the institution of this action wherein plaintiff alleges that he has been damaged and asks for judgment against the bank in the sum of $2,000 ‘ ‘ because of the illegal and wrongful act of the defendant in transferring and paying over the sum of $2,000 to Edward I. Chirlin, which was contrary to the restraining notice served upon it [defendant Bank] ”. Stated differently, plaintiff claims that but for the bank’s wrongful payment of $2,000 to the judgment debtor Chirlin, the plaintiff as judgment creditor would have realized on account of his judgment the sum of $2,432.11 instead of only $432.11.
The questions before the court are twofold:
(1) Does the restraining notice extend to the proceeds of the previously certified but unused check of $2,000 which sum was deposited to the credit of ¡Chirlin’s account on the day following the service of the restraining notice ?■
*1055 (2) If the first question is answered in the affirmative, may the plaintiff maintain an action for damages caused by the bank in violating the restraining notice? Stated differently, is the plaintiff’s sole and exclusive remedy an application to punish the bank for contempt?
I
Perforce of its prior certification, the bank argues that the amount of the check ($2,000) was thereafter rendered immune from the claims of Chirlin’s judgment creditors. As a generalized proposition this would be true. But as applied to the facts in this case the bank’s argument lacks substance. It glosses over the realities of the situation. When the Bank indulged in the transaction of October 11 whereby the certified check was vitiated, the funds in Chirlin’s account were then increased by $2,000. Having knowledge of the restraining notice served just one day earlier, the bank nevertheless permitted the judgment debtor Chirlin to withdraw $2,000 from his account. And this in the face of the bank’s own written advice to Chirlin on October 10 that they would be unable to honor any further checks drawn against his account. Obviously, the bank was then mindful of the restraint printed on the restraining notice that “ this notice also covers all property in which the judgment debtor has an interest hereafter coming into your possession or custody, and all debts hereafter coming due from you [the Bank] to the judgment debtor.” The quoted part of the notice is consistent with the relevant restraining provisions contained in CPLR 5222 (subd. [b]), the full text of which was also printed on the face of the restraining notice.
Both on the law and the facts, this court concludes that the proceeds of the $2,000 check admittedly deposited on October 11, 1966 to the credit of the judgment debtor Chirlin were subject to the provisions of the restraining notice served on October 10. This result follows whether the $2,000 thus deposited or credited to the debtor’s account be deemed a debt owing from the bank to its depositor Chirlin or property in the possession or custody of the bank in which the debtor is known to have an interest.
II
The court proceeds to a consideration of the other branch of defendant’s argument that in any event the sole and exclusive remedy available to plaintiff is to punish the bank for contempt.
After considering all of the relevant statutory provisions including pertinent legislative studies and reports and the prac *1056 tice commentaries under the CPLR* coupled with a research of decisional law, the court holds that plaintiff is not circumscribed by or limited to the remedy of contempt.
It may be noted here that the kind of conduct contemplated as the basis of a contempt for violation of a restraining notice under article 52 of the CPLR is a “ refusal or willful neglect ” to obey the notice. This is expressly provided in CPLR 5251, as amended by chapter 773 of the Laws of 1965, effective September 1, 1965. That is not the situation here. Plaintiff makes no pretense that the bank’s conduct was contumacious. Plaintiff does insist, however, that the bank is not immune from its own negligence in failing to observe the provisions of the restraining notice. To that end plaintiff seeks damages from the defendant.
Defendant’s argument boils down to this. While urging that plaintiff’s sole remedy lies in contempt, the hank is also quick to assert that the purported remedy of contempt will avail the plaintiff nothing because the bank’s conduct was not contemptuous. It is another way of saying that although the plaintiff was wronged by the acts of the bank, nevertheless, for all practical and realistic purposes, the wrong committed is without a remedy. At best, the remedy of contempt, if it be here invoked, is surely illusory. The argument is repugnant to the very essence and true concept of the judicial process. Undeniably, the bank was under a statutory duty owing to plaintiff as a judgment creditor to obey the restraining notice. That duty was mandated by the Legislature as an effective aid in the enforcement or collection of a money judgment. For a breach of the duty caused by the negligence of its employees, the bank must be held accountable.
In its memorandum, defendant states that ‘ ‘ counsel for the Bank have extensively researched the law and have not been able to find a case which imposes such liability” of the kind here sought to be imposed upon the bank. Based on its own research, this court concludes that by analogy of reasoning, judicial authority supports the holding that, apart from the remedy of contempt authorized by the CPLR, a bank may be held liable to a judgment creditor for its negligence in complying with a restraining notice.
*1057 In Riedel Glass Works v. Kurtz & Co. (260 App. Div. 163, rearg. den. 260 App. Div. 859, affd. and appeal dismissed 287 N. Y. 636) a third party was adjudged in contempt and fined pursuant to the provisions of section 773 of the Judiciary Law. The contempt was on two counts: (1) for making false claims against certain attached property in violation of former Civil Practice Act (§ 924) and (2) for a violation of the Judiciary Law (§ 753, subd. 4) by rescuing property in the custody of an officer by virtue of a mandate of the court. It is significant that this statute, although authorizing contempt, was completely silent as to any remedy based on an action at law for damages. Upon appeal, the court considered the effect of the imposition of a contempt fine under section 773 of the Judiciary Law with particular relation to the right of an aggrieved party to maintain a separate or concurrent action for. damages for a violation of the underlying statutes. The court held that an action could be so maintained even in a case where contempt was the proceeding authorized by the statute. In language that is especially applicable to the case at bar, the court said that section 773 is “ an express recognition of the fact that the provision for proceedings for contempt was not intended to be in any way a substitute for the right to proceed by action, but was intended to be a concurrent remedy.” (pp. 167-168). It should be pointed out also that the provisions of section 773 have remained unchanged since the Riedel decision.
Here, plaintiff elected not to proceed to punish the defendant for contempt as authorized by the underlying statutes, CPLB, 5222 and 5251, which are geared to the contempt machinery under the Judiciary Law, including section 773 thereof. Instead, plaintiff chose to have recourse to an action for damages. That he has a right so to do is the holding of the Riedel case.
Lipkin & Son v. Bauman (100 N. Y. S. 2d 270) is further judicial recognition of the proposition that while the facts may not warrant an adjudication of contempt, a third party can nevertheless be liable in a separate proceeding for a violation of an injunctive provision.
More currently, in Matter of Sumitomo Shoji N. Y. v. Chemical Bank N. Y. Trust Co., 47 Misc 2d 741 and 47 Misc 2d 746 [Sup. Ct., N. Y. County, 1965], both affd. 25 A D 2d 499 [1st Dept., 1966]), the court dispelled any remaining doubt as to the right of a judgment creditor to seek appropriate relief against a third party for violation of a restraining notice dehors a contempt proceeding.
*1058 From a reading of the record on appeal and the opinion of the Special Term (G eller J.), it appears that on March 16, 1965, pursuant to CPLB 5222, a restraining notice was served upon the third party, Chemical Bank, specifying several bank accounts, including two corporate accounts, as to which the bank was forbidden to make any payment or transfer except upon direction of the court. A few days later, with knowledge of the service of the restraining notice, the bank nevertheless honored checks drawn by the judgment debtor on the corporate accounts and the accounts were thereby closed. Thereupon, the judgment creditor instituted a proceeding demanding judgment against the bank for damages to the extent of the amount allowed to be withdrawn by the bank in violation of the restraining notice. In upholding the proceeding against the bank, the Special Term said (p. 744): “ A
judgment creditor’s specification of debt or property in a restraining notice is binding on the person served to the extent of forbidding payment or transfer except pursuant to an order of the court. If such person does make payment or transfer in disregard of the restraining notice, he takes the risk of liability for damages and contempt if the judgment creditor can establish that the debt was owed to the judgment debtor or that he had an interest in such property.”
An interesting sidelight to the Sumitomo case is the court’s rejection of the contention by counsel for the- Chemical Bank that the judgment creditor was relegated to either a plenary action for damages or a motion to punish the bank for contempt. The court treated the objection as merely procedural, having to do only with the form of the action or proceeding. As so pointedly said by the court in 50 New Walden v. Federal Ins. Co. (39 Misc 2d 460, 464 [1963], revd. on other grounds 22 A D 2d 4 [1964]): “ let every wrong have a remedy ” and further, “ Semantics and names based on form should give way to .sound justice resting on substantial reasons.” The judicial philosophy thus expressed is especially fitting to the situation in the case before this court. (See, also, CPLB, 103.)
In the present posture of this case, plaintiff’s motion for summary judgment is granted to the extent of directing that the matter be set down for hearing and determination solely as to the quantum of damages sustained by plaintiff by reason of the defendant’s violation of the restraining notice.
Defendant’s cross motion for summary judgment is denied in all respects.

 See McKinney’s Cons. Laws of N. Y., Book 7B, CPLR, art. 52, “ Enforcement of Money Judgments ” and in particular, CPLR 5222, 5225, 5227, 5251, and the Practice Commentaries thereunder by Professor David D. Siegel, including the extensive references .to the various legislative reports. See, also, McKinney’s, Book 29, Judiciary Law, art. 19, “ Contempts,” particularly §§ 753, 754, 770. 773. 774.