OPINION OF THE COURT
Jasen, J.
This appeal concerns the effect of a restraining notice served upon a bank pursuant to CPLR 5222. At issue is whether a garnishee bank violates a restraining notice served upon it by disbursing funds from the account of a judgment debtor notwithstanding the fact that the bank maintains a balance in the account which is in excess of twice the amount owed on the judgment. Also involved is the interplay between the garnishee bank’s right of setoff under section 151 of the Debtor and Creditor Law and the judgment creditor’s rights under CPLR 5222.
The facts which give rise to the present controversy are not in dispute. On July 20, 1978, Aspen Industries, Inc. (Aspen), obtained a judgment against J. D. Whiting, Inc. (Whiting), in the amount óf $6,838.80. Thereafter, Whit *578 ing paid $2,000 to Aspen on this judgment, leaving a balance of $4,838.80 still owing. At the time, Whiting had an account at Marine Midland Bank (Marine) and, on October 11,1978, Aspen caused a restraining notice to garnishee to be served on Marine pursuant to CPLR 5222. The restraining notice directed Marine not to transfer or otherwise dispose of any of the moneys “contained in a checking and/or savings account in the name of J. D. Whiting, Inc.” As of the date the restraining notice was served, the Whiting account at Marine had a balance of $838.51.
Notwithstanding receipt of the restraining notice, Marine allowed the Whiting account to remain active. On October 12, 1978, a deposit of $18,456.81 was made to the account. On October 13, 1978, approximately $8,000 in checks on the Whiting account payable to parties other than Aspen were honored by Marine and additional deposits aggregating in excess of $13,000 were accepted. Finally, on October 16, 1978, five days after the restraining notice was served, $10,000 was placed in the Whiting payroll account, a check for $1,000 was paid to one “M. Bednarcyk” and a check for $163.69 was paid to Marine itself. At this point, Marine exercised its right of setoff under section 151 of the Debtor and Creditor Law, paying over to itself the remaining balance in the Whiting account in the amount of $27,622.32. This setoff was in partial satisfaction of $124,-597.64 owed by Whiting to Marine on a note which Whiting had defaulted on prior to service of the restraining notice by Aspen.
The present proceeding was then instituted by Aspen pursuant to CPLR 5227 seeking judgment in the amount of $4,846.51, plus interest and costs, for Marine’s alleged violation of the restraining notice. Special Term granted Marine’s motion to dismiss the petition, stating that, inasmuch as Marine had a superior right of setoff under section 151 of the Debtor and Creditor Law in an amount greatly in excess of Aspen’s judgment at all times during which the restraining notice was in effect, Aspen had failed to establish that it was damaged by Marine’s activities in allowing the Whiting account to remain active after service of the notice upon it.
*579 On appeal, a divided Appellate Division reversed and granted the petition. The majority held that Marine, by keeping the Whiting account open after service of the restraining notice, was liable to Aspen for damages. According to the majority, the “belated exercise by the Bank of its right of setoff created a superior right in Aspen to the funds set aside in compliance with CPLR 5222.” (74 AD2d, at p 63.) The dissenting Justices, while agreeing that Marine had violated the restraining notice, were of the view that Aspen had failed to establish that it was damaged by this violation since the funds in the Whiting account were at all times relevant subject to Marine’s superior right of setoff. There should be a reversal.
Among the various enforcement devices available to a judgment creditor under CPLR article 52 is the restraining notice. A party served with such a notice “is forbidden to make or suffer any sale, assignment, transfer or interference with any [of the judgment debtor’s] property * * * to any person other than the sheriff, except upon direction of the sheriff or pursuant to an order of the court”. (CPLR 5222, subd [b].) Thus, the restraining notice serves as a type of injunction prohibiting the transfer of the judgment debtor’s property. This notice may be served on either the judgment debtor himself or, as in the present case, upon a third-party “garnishee” — a person who owes a debt to the judgment debtor or who is in possession of property in which the judgment debtor has an interest. (CPLR 105, subd [i].) When served upon a garnishee, the injunctive effect of the restraining notice continues for one year or until such time as the judgment is satisfied or vacated, whichever occurs first, and extends to property both “then in and thereafter coming into the possession or custody” of the garnishee. (CPLR 5222, subd [b]; see, generally, Siegel, New York Practice, § 508.)
In contrast with prior law (see Civ Prac Act, §§ 799-a, 808; Matter of Wickwire Spencer Steel Co. v Kemkit Scientific Corp., 292 NY 139, 142; see, generally, Distler & Schubin, Enforcement Priorities and Liens: The New York Judgment Creditor’s Rights in Personal Property, 60 Col L Rev 458, 476-478, 499-506), service of a CPLR 5222 restraining notice confers no priority upon the judgment *580 creditor in the form of a lien on the judgment debtor’s property. (See Matter of International Ribbon Mills [Arjan Ribbons], 36 NY2d 121; City of New York v Panzirer, 23 AD2d 158; Matter of H & H Poultry Co. v Lafayette Nat. Bank, 45 Misc 2d 480; see, generally, 6 Weinstein-KornMiller, NY Civ Prac, par 5222.21.) Therefore, a judgment creditor serving a restraining notice ordinarily is required to take further steps in enforcing his judgment, such as an execution or levy upon the judgment debtor’s property, in order to prevent the intervening rights of third parties from taking precedence over his claim against the judgment debtor. (See Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 5222, C5222:8; but cf. Matter of International Ribbon Mills [Arfan Ribbons], supra.) However, violation of the restraining notice by the party served is punishable by contempt (CPLR 5222, subd [a]; 5251) and subjects the garnishee to personal liability in a separate plenary action or a special proceeding under CPLR article 52 brought by the aggrieved judgment creditor. (See, e.g., Nardone v Long Is. Trust Co., 40 AD2d 697; Mazzuka v Bank of North Amer., 53 Misc 2d 1053; Matter of Sumitomo Shoji N. Y. v Chemical Bank N. Y. Trust Co., 47 Misc 2d 741, affd 25 AD2d 499.) It is this type of liability which Aspen seeks to impose upon Marine in the present proceeding. This, however, Aspen may not do.
The last sentence of CPLR 5222 provides that “[i]f a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor in an amount equal to twice the amount due on the judgment, the restraining notice is not effective as to other property or money.” (CPLR 5222, subd [b].) Thus, as did its predecessor under the Civil Practice Act (Civ Prac Act, § 781), CPLR 5222 requires the retention of twice the amount due on the judgment in order to ensure payment of all costs and interest as well as the balance owing to the judgment creditor on the judgment. Once this is done, the garnishee is then free to dispose of the remainder of the judgment debtor’s property in excess of the retained amount without regard to the restraining notice. This provision in CPLR 5222 is a practical recognition by the Legislature of the commercial reality that a large asset of a judgment *581 debtor should not be frozen, even temporarily, for purposes of satisfying a judgment which represents but a small portion of the corpus of that asset. We find this provision of CPLR 5222 to be dispositive of the present appeal.
The balance in the Whiting account when the restraining notice was served amounted to $838.51. In the days that followed, additional deposits increased the balance to $19,-295.32 on October 12, $24, 559.06 on October 13, and finally $27,622.32 on October 16 when Marine exercised its right of setoff. Although disbursements were made during this period, at no time while the restraining notice was in effect did Marine allow the balance in the Whiting account to drop below twice the amount then owing on the judgment to Aspen. In fact, the balance in the acocunt was increased to over five times the amount due on the judgment as a result of these transactions. Thus, since at least twice the amount due on the judgment was withheld by Marine, the restraining notice was “not effective” as to the remainder of the funds in the Whiting account and Marine did not violate the notice served upon it by keeping the account open.
Moreover, even if it were assumed that Marine violated the restraining notice, Aspen would not be entitled to recover. While a violation of a restraining notice can subject the garnishee to liability (see Nardone v Long Is. Trust Co., 40 AD2d 697, supra; Mazzuka v Bank of North Amer., 53 Misc 2d 1053, supra), a judgment creditor, in order to recover, must establish that it sustained damages as a result of the garnishee’s disobedience of the notice. It is necessary, therefore, for the judgment creditor to demonstrate that property of the judgment debtor was available to satisfy the judgment at the time the restraining notice was in effect. (See Nardone v Long Is. Trust Co., 40 AD2d 697, supra.) Here, however, because of Marine’s right of setoff to satisfy a pre-existing obligation of the judgment debtor to the bank, Aspen cannot establish such damages.
Section 151 of the Debtor and Creditor Law provides in pertinent part: “Every debtor [here, Marine*] shall have *582 the right upon * * * the issuance of any execution against any of the property of; the issuance of a subpoena or order, in supplementary proceedings, against or with respect to any of the property of; or the issuance of a warrant of attachment against any of the property of; a creditor [here, Whiting], to set off and apply against any indebtedness, whether matured or unmatured, of such creditor to such debtor, any amount owing from such debtor to such creditor, at or at any time after, the happening of any of the above mentioned events, and the aforesaid right to set off may be exercised by such debtor against such creditor * * * notwithstanding the fact that such right of set off shall not have been exercised by such debtor prior to the making, filing or issuance, or service upon such debtor of, or of notice of, any such * * * execution, subpoena or order or warrant.”
In short, this statute confers -upon a garnishee a right to set off any debt owed to it by a judgment debtor. This right of setoff, we have said, is superior to the rights of intervening judgment creditors and may be exercised even after the judgment creditor has undertaken enforcement of his claim against the judgment debtor. (See Matter of Industrial Comr. of State of N. Y. v Five Corners Tavern, 47 NY2d 639, 645, supra.) Although the statute does not expressly refer to restraining notices, it seems abundantly clear that, by enacting section 151 of the Debtor and Creditor Law, the Legislature intended to “cover the field” in terms of the garnishee’s right of setoff vis-a-vis the various enforcement devices. (See 1952 Report of the NY Law Rev Comm, p 365.) Hence, the rights conferred under a restraining notice, which, in actuality, is but a “junior remedy” in the arsenal of enforcement mechanisms under CPLR article 52, clearly are subject to the superior right of setoff under section 151 of the Debtor and Creditor Law. (Accord Matter of West Harlem Pork Center v Empire Nat. Bank, 60 AD2d 859.)
*583 Here, the amount of Whiting’s indebtedness to Marine at the time the restraining notice was served, $124,597.64, greatly exceeded the total which would have been on deposit even if Marine had refused to honor the checks presented on the judgment debtor’s account on or after October 11, 1978. Hence, Marine at all times relevant had a superior right to offset the entire amount present in the Whiting account, leaving no funds available to satisfy Aspen’s judgment. This is precisely the course which Marine pursued and section 151 of the Debtor and Creditor Law clearly authorized such action. Thus, no loss resulted to Aspen under the facts of this case.
For the reasons stated, the order of the Appellate Division should be reversed, with costs, and the order of Supreme Court, Onondaga County, reinstated.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc.

 In this case, Marine is a “debtor” of Whiting for purposes of section 151 of the Debtor and Creditor Law, for it is clear that a bank is a debtor of its *582 depositor. (Matter of Industrial Comr. of State of N. Y. v Five Corners Tavern, 47 NY2d 639, 645, n 2; see, also, Brigham v McCabe, 20 NY2d 525, 530-531; Solicitor for Affairs of His Majesty’s Treasury v Bankers Trust Co., 304 NY 282, 291.)