*722 OPINION OF THE COURT
David O. Boehm, J.
On July 21, 1988 petitioner, Dawn M. Kates, was granted and entered a judgment against Peter A. Goddard in the amount of $7,674.02. One-half hour after entry of the judgment, at 2:45 p.m., petitioner served a restraining notice on the 19 West Main Street, Rochester, New York, branch office of respondent, Marine Midland Bank, N. A., to restrain distribution from a trust established for the benefit of Peter A. Goddard under the will of his mother, Elsie B. Goddard, which named respondent as trustee. Approximately one-half hour before the restraining notice was served respondent honored a request by Goddard and wired $5,229 to an account held by him in Florida. In wiring the moneys respondent advanced its own funds and thereafter, on July 25, 1988, sold 5,281 units of Bayshore Cash Reserve Fund, a money market fund held by the trust, to cover the advance, as well as a July 25, 1988 payment of $52 to White Haven Memorial Park, Inc.
On July 27, 1988, petitioner served a property execution upon Marine Midland but obtained only $1,567.50. Petitioner has now brought this proceeding in what appears to be a question of first impression against Marine Midland for violating the restraining notice and seeks a judgment for the value of the money market shares sold subsequent to the service of the restraining notice. Respondent cross-moves for summary judgment dismissing the petition.
A restraining notice serves as an injunction restraining the person served from making any transfer of the judgment debtor’s property (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5222:4, at 187). The notice may be served on either the judgment debtor or upon a third-party garnishee who owes a debt to the judgment debtor or who is in possession of property in which the judgment debtor has an interest (CPLR 5222 [b]). A notice served on a garnish ee is effective for one year, or until the judgment is satisfied, whichever occurs first, and extends to property "then in and thereafter coming into” the garnishee’s possession, and all debts, "then due and thereafter coming due” (CPLR 5222 [b]X
"[Violation of [a] restraining notice by the [person] served is punishable by contempt (CPLR 5222, subd. [a]; 5251) and subjects the garnishee to personal liability in a separate plenary action or a special proceeding under CPLR article 52 *723 brought by the aggrieved judgment creditor” (Aspen Indus. v Marine Midland Bank, 52 NY2d 575, 580). It is the latter relief petitioner here seeks against respondent.
Respondent argues that the restraining notice was never effective because at the time of service there was no debt owing to Goddard. At that time, respondent claims, the account was in a negative balance due to the advance of funds, and a restraining notice served on a garnishee is only effective "if, at the time of service, he owes a debt to the judgment debtor or he is in possession * * * of property in which * * * the judgment debtor has an interest” (CPLR 5222 [b]).
Although the cash account respondent maintained as trustee may have had a negative balance at the time the restraining notice was received, there is no indication that the trust itself was depleted. In fact, the transaction summary reflects disbursements made subsequent to the service of the notice, an indication that the trust was solvent. Absent proof that the trust was depleted, the restraining notice was effective. A trust held by a bank constitutes a debt owed by the bank (Vanderbilt Credit Corp. v Chase Manhattan Bank, 100 AD2d 544, 545) as well as an interest in property subject to such restraint (see generally, 42 NY Jur 2d, Decedents’ Estates, § 2503; 6 Weinstein-Korn-Miller, NY Civ Prac ¶ 5201.07).
Although the money paid to Goddard under the trust was a matter within the respondent’s discretion, this does not preclude the use of a restraining notice; such notice may be employed against contingent property interests (ABKCO Indus. v Apple Films, 39 NY2d 670). In passing, it may be noted that trust principal is exempt from execution under CPLR 5205 (c), and that payments made from a trust are entitled to a partial exemption under subdivision (d) (1) of CPLR 5205 (see generally, Siegel, NY Prac §§ 489-491).
Respondent also argues that service of a restraining notice upon its branch office rather than upon the trust department, which is located at a different address, rendered the notice invalid. It has been held as a general rule that in order for a judgment creditor to reach a particular bank account he must serve the restraining notice upon the branch in which the account is maintained (Therm-X-Chemical & Oil Corp. v Extebank, 84 AD2d 787). This rule, however, has been criticized as obsolete given the increase in modern centralized and computerized commercial banking (see, Digitrex, Inc. v Johnson, 491 *724 F Supp 66). But that issue is academic here since it is undisputed that the restraining notice was served upon respondent’s branch office after the funds were wired, and that it was received by the respondent’s trust department on July 22, 1988, prior to the July 25, 1988 sale of money market shares. Thus, the sole issue involves the propriety of respondent’s sale of the shares after the receipt of the restraining notice. Generally, "since the service requirements in CPLR 5222 (a) merely perform a notice function, improper service should invalidate the restraining notice only if the would-be recipient does not receive notice” (6 Weinstein-Korn-Miller, NY Civ Prac If 5222.10). Merely because the restraining notice may have been improperly served on the wrong office initially does not render it invalid because it was, nonetheless, received by the appropriate department prior to the acts complained of here.
Respondent’s strongest argument is that its advance of funds prior to receipt of the restraining notice gave rise to a right of setoff under section 151 of the Debtor and Creditor Law, entitling it to priority over any rights petitioner may have had under the restraining notice. Section 151 gives a garnishee a right to set off any preexisting debt owed to it by a judgment debtor, which right is superior to the rights of intervening judgment creditors, and may be exercised after the judgment creditor has initiated enforcement of his judgment (Aspen Indus. v Marine Midland Bank, 52 NY2d 575, 582, supra).
Under the will creating the trust, respondent as trustee is authorized "to borrow money from itself or others on such terms as [it] may deem best, and to pledge any property of the estate or trust as security for the repayment thereof.” Additionally, section 96, subdivision (1) of the Banking Law authorizes a bank to "lend money on real or personal security”. Accordingly, respondent possessed the necessary authority to advance the funds to Goddard upon the security of the trust assets.
As a general rule, whenever a bank has advanced money to another it has a lien or right of setoff as to all funds or securities in its possession, unless a special agreement exists between the parties showing that such lien or right of setoff was not intended (see generally, 5A Michie, Banks and Banking, ch 9, § 118a). Here, the will creating the trust gave respondent broad powers, including the authority to borrow funds from itself and to pledge trust assets as security for *725 repayment. Since there does not appear to be proof of any agreement precluding respondent from asserting a right of setoff against trust assets for the advances it made to Goddard, the general rule should apply here to give respondent a right of setoff to recoup the advance made prior to its receipt of the restraining notice.
Petitioner argues that the right of setoff is inapplicable because such right may not be asserted against an account made for a special purpose such as a trust. While it is true that a bank may not properly assert a setoff against a special purpose account (see generally, 9 NY Jur 2d, Banks and Financial Institutions, § 308), the rationale for such restriction is that a bank, having accepted a deposit for a particular purpose, may not assert a lien or setoff inconsistent with its special undertaking (see generally, 5A Michie, Banks and Banking, ch 9, § 129). Thus, for example, a bank may not set off funds in an individual retirement account to recoup moneys owed to it by a depositor who defaulted on a loan guarantee (see, Masi v Ford City Bank & Trust Co., 779 F2d 397; see also, In re Greenwald’s Estate, 143 NYS2d 464 [bank may not set off estate account for debt owed to bank by decedent]; Cassedy v Johnstown Bank, 246 App Div 337 [bank may not set off account established for the benefit of bankrupt’s creditors to cover promissory note]). The restriction is inapplicable in this case, however, because the right of setoff here arises solely out of the administration of the trust itself by the bank as trustee. Thus, unlike the cases cited above, respondent is not attempting to satisfy a debt owed to it by reaching funds held for a special purpose unrelated to the debt.
It is also irrelevant that respondent may not have complied with the notice requirements of Banking Law § 9-g which requires notice of setoff to be sent to the depositor. Subdivision (3) of that section expressly provides that failure to give the requisite notice "shall not be deemed to affect the validity of the right of set off.”
Although respondent is entitled to a setoff for the amount necessary to recoup the advance made prior to receipt of the restraining notice, it is not entitled to a setoff for any advances made thereafter, since such right extends only to preexisting obligations (Aspen Indus. v Marine Midland Bank, 52 NY2d 575, 581, supra). Thus, to the extent subsequent payments from the trust were made to Goddard, or for his benefit (see, Ray v Jama Prods., 74 AD2d 845), in disobedience of the restraining notice, such as the July 25, 1988 payment to *726 White Haven Memorial Park, petitioner may recover the amount she was damaged thereby, bearing in mind the foregoing limitations imposed by CPLR 5205 (c), and (d) (1) (see, Laborers Union Local 1298 v Lyon & Sons, 66 Misc 2d 1042, 1049; see generally, 6 Weinstein-Korn-Miller, NY Civ Prac ¶ 5227.07). A hearing is, therefore, required to fix petitioner’s damages (see, Nardone v Long Is. Trust Co., 40 AD2d 697).
Accordingly, respondent’s application for summary judgment dismissing the petition is denied.