

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-5-2002

# VI Bur Internal v. Chase Manhattan Bank

Precedential or Non-Precedential: Precedential

Docket No. 01-3467

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"VI Bur Internal v. Chase Manhattan Bank" (2002). *2002 Decisions.* Paper 792.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/792

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed December 5, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-3467/3468/4325/4326/4464

VIRGIN ISLANDS BUREAU OF INTERNAL REVENUE
       Appellant (01-3468/4464)

v.

CHASE MANHATTAN BANK,

       Defendant/Third-party Plaintiff
       Appellant (01-3467/4325)

v.

WILLIAM LANSDALE,

       Third-Party Defendant
       Appellant (01-4326)

Appeal from the District Court of the Virgin Islands
Division of St. Thomas
(D.C. Civil Action No. 93-cv-00093)
District Judge: Honorable Raymond L. Finch
District Judge: Honorable Thomas K. Moore

Argued May 13, 2002

Before: AMBRO, FUENTES and GARTH, Circuit Judg es

(Opinion filed: December 5, 2002)

       Lawrence M. Hill, Esquire (Argued)
       Michael I. Saltzman, Esquire
       Richard A. Nessler, Esquire
       White & Case LLP
       1155 Avenue of the Americas
       New York, NY 10036
        Attorney for Appellant
       Chase Manhattan Bank

       Iver A. Stridiron
       Attorney General
       Elliott McIver Davis
       Solicitor General
       Joanne E. Bozzuto (Argued)
       Special Assistant Attorney General
       Richard M. Prendergast
       Assistant Attorney General
       Office of Attorney General of
        Virgin Islands

Department of Justice
48B-50C Kronprindsens Gade,
GERS Building, 2nd Floor
Charlotte Amalie, St. Thomas
USVI, 00802

John A. Sopuch, III, Esquire
Sopuch Nouhan Higgins Arnett &
 Gaubert
311 South Wacker Drive, Suite 5600
Chicago, IL 60606

John A. Zebedee, Esquire
Hymes & Zebedee
10 Norre Gade, 3rd Floor
P.O. Box 990
Charlotte Amalie, St. Thomas
USVI, 00804
 Attorneys for Appellee
Virgin Islands Bureau of
Internal Revenue

2

Henry C. Smock, Esquire (Argued)
Smock Law Offices
Palm Passage, Suite B18-23
P.O. Box 1498
Charlotte Amalie, St. Thomas
USVI, 00804

Richard Smith, Esquire
Cynthia Morales, Esquire
Shook, Hardy & Bacon LLP
Miami Center, Suite 2400
201 South Biscayne Boulevard
Miami, FL 33191-4332
 Attorney for Appellee
William Lansdale

OPINION OF THE COURT

AMBRO, Circuit Judge:

This case poses two questions. First, does senior bank officers' knowledge that the company named in a notice of levy previously had merged into another company neither named nor identified in the levy notice require the bank to enforce the levy against the company not named in the notice? Under the circumstances of this case, we hold that it does not. Second, must a bank honor a notice of levy on property in which it holds an unexercised right of setoff, but has limited the property owner's access? We hold that because an account holder retains a property interest in the account until the right of setoff has been exercised, dishonoring the levy is not justified.

I. Background

William Lansdale established La Isla Virgen, Inc. ("La Isla Virgen" or "LIV"), a Delaware corporation, in 1981. He was its president and a director, and he and his wife were its sole shareholders. LIV bought an $800,000 certificate of deposit ("CD") from Chase Manhattan Bank ("Chase") on August 20, 1985, and later increased the amount to $1.2 million. On March 18, 1986, Lansdale personally borrowed

$1.2 million from Chase, granting (through LIV) to Chase a security interest and right of setoff against LIV's CD.

In late 1988 LIV merged into Marina Pacifica Oil Company ("Marina Pacifica"), a California corporation wholly owned by the Lansdales. In early 1989 Marina Pacifica bought a renewal CD from Chase for $1,487,371.95, by converting the LIV CD. Marina Pacifica granted Chase a security interest in the renewal CD.

Four months later, senior Chase officers recommended the reapproval of the collateralized line of credit to Lansdale. An internal memorandum noted that Lansdale, besides being the majority shareholder and president of Marina Pacifica,

> was also the 100% owner of our former customer, La Isla Virgen, Inc., which during 1988 ceased to be, merging into [Marina Pacifica] which survived the merger. Marina Pacifica Oil resultantly possesses all the debts and obligations of the former LIV. Additionally, the merger agreement provided for the preservation of all the rights of creditors relative to all liens upon any property of LIV, and provided for the attachment of such liens to the surviving corporation.

At the same time, LIV was embroiled in litigation with the Virgin Islands Bureau of Internal Revenue ("VIBIR") stemming from alleged income tax liabilities for past tax years. The District Court of the Virgin Islands ultimately resolved that issue in favor of the VIBIR, and we affirmed. See La Isla Virgen, Inc. v. Olive, Nos. 1986-263, 1988-012, and 1988-270 (D.V.I. Feb. 28, 1991), aff'd, 952 F.2d 1393 (3d Cir. 1991).

On April 22, 1991, the VIBIR, in its attempt to execute against assets of LIV to collect on its judgment, issued to Chase's St. Thomas branch a notice of levy against LIV for $22,514,390.14 in unpaid taxes, interest, and penalties. The notice identified the taxpayer as "La Isla Virgen," and listed its taxpayer identification number. On the date of the notice, $1,304,138.17 remained in Marina Pacifica's CD pledged to Chase, and Lansdale owed a $600,000 balance on his personal loan from Chase secured by the CD.

Chase's customer support services department in St.

Thomas performed a computer search of Chase's account database. The database maintained files only on open accounts. Chase searched its database both by taxpayer name and tax identification number. It then sent a notice to the holders of any matching accounts, giving an account holder twenty-one days "to settle the dispute with the taxing authority." If there was no such resolution, Chase would remit the funds to that authority. Using this procedure, Chase discovered an open account under La Isla Virgen's name, labeled "LIV Building Account." It remitted the balance, $5,058.53, to the VIBIR. It did not perform a search under Marina Pacifica's name or identification number.

On May 12, 1991, Lansdale requested that Chase transfer $724,696.02 from the CD to a Marina Pacifica account in California. Chase refused because the transfer would have reduced the balance below the $600,000 required to secure fully Lansdale's personal loan. In this context, Chase transferred $703,338.17 to the Marina Pacifica account, leaving a balance of $600,800 in the CD.

On March 17, 1992, Marina Pacifica merged into Lonesome Dove Petroleum Corporation ("Lonesome Dove"), a Texas corporation wholly owned by the Lansdales. Marina Pacifica assigned its interest in the CD to Lonesome Dove. On May 20, 1992, the VIBIR served Chase with a notice of levy, identifying the taxpayer as La Isla Virgen, naming Marina Pacifica and Lonesome Dove as successor corporations, and providing the taxpayer identification numbers of all three corporations. The balance on the CD was $606,167.51, but Chase wired the accumulated interest of $6,167.51 to Lonesome Dove, leaving a $600,000 balance, which it did not remit to the VIBIR.

One week after the VIBIR served the second notice of levy, Chase sent a letter to John deJongh, its local counsel in the Virgin Islands, asking for his opinion on offsetting the balance of the CD against Lansdale's loan. DeJongh replied that he was "unable to vouch for the seniority of Chase's lien as against the V.I. Government's tax lien," but agreed with the decision to set off. Chase sent a letter to

5

Lansdale demanding payment and on June 5 set off the balance of the CD against Lansdale's loan.

On June 16, 1993, the VIBIR sued Chase for failure to comply with the 1992 levy, seeking the value of LIV's property Chase held at the time of the levy, plus a 50% penalty. The VIBIR agreed to a dismissal with prejudice as to the 50% penalty in exchange for Chase adding Lansdale as a third-party defendant, which it did. In May 1998 the District Court granted the VIBIR's motion to amend its complaint to add a count for failure to comply with the 1991 levy, and seeking a 50% penalty for that failure. Both parties moved for summary judgment.

On July 30, 2001, the District Court granted the VIBIR's motion for summary judgment on the two levies, and granted Chase's cross-motion to dismiss the 50% penalty. Although the order resolved all claims between the two parties, Chase retained a third-party claim for contribution from Lansdale. In light of the outstanding claim, Chase and the VIBIR were uncertain whether this order constituted a final order, and both filed motions for entry of a final judgment under Federal Rule of Civil Procedure 54(b).[1] The Court granted the motion and entered judgment on October 26, 2001.

Because we find that the District Court did not abuse its discretion in entering its 54(b) judgment, its order is appealable. Berckeley Investment Group Ltd. v. Colkitt, 259 F.3d 135, 140 (3d Cir. 2001).[2] Our appellate jurisdiction is pursuant to 28 U.S.C. S 1291, and we exercise plenary review over the District Court's grant of summary

_____

1. Rule 54(b) provides: "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

2. Because Lansdale is not a party to VIBIR's lawsuit against Chase, it is beyond peradventure that Lansdale cannot appeal the District Court's judgment as to that suit. Lansdale's attempt to join in this appeal is therefore dismissed for lack of standing. We further deny Lansdale's motion to serve as amicus curiae.

6

judgment. Tse v. Ventana Medical Systems, Inc. , 297 F.3d 210, 217 (3d Cir. 2002).

II. Discussion

A. The 1991 levy

The 1991 notice of levy, sent to Chase's St. Thomas branch, named only LIV. At the time of the notice, LIV had merged, more than two years earlier, into its successor company, Marina Pacifica. The District Court used a general agency standard to impute to Chase knowledge of Marina Pacifica's status as LIV's successor. V. I. Bureau of Internal Revenue v. Chase Manhattan Bank, 168 F. Supp. 2d 480, 489 n.13 (D.V.I. 2001) (citing F.D.I.C. v. Ernst & Young, 967 F.2d 166, 170 (5th Cir. 1992), and In re Carter, 511 F.2d 1203, 1204 (9th Cir. 1975)). It reasoned that because senior Chase officers knew Marina Pacifica was LIV's successor in interest, their knowledge was imputed to Chase as a whole. Chase did have property belonging to Marina Pacifica at the time it received notice of the 1991 levy naming LIV, and the Court concluded it should have surrendered that property to the IRS.

What the VIBIR is attempting is to shift the burden to Chase to research whether assets held once by one of its customers are now held by a successor entity. For an immense and extensive operation like that of Chase, the consequences of such a ruling slide none too slowly down the slope from irritating to impossible. While we reject per se pronouncements absolving entities like Chase in every instance,3 in this case it makes more sense, and better policy, simply to place on the VIBIR the burden of including each taxpayer Chase should search for assets, particularly when the VIBIR knows that Marina Pacifica was LIV's successor and indeed in the VIBIR's 1992 levy mentioned, in addition to LIV, not only Marina Pacifica but Lonesome Dove as well.

---

3. For example, Chase is not absolved where evidence shows it to be in conspiracy with Lansdale to hide assets or it engages in fraud. No evidence of either is presented on the record before us.

The VIBIR and the District Court cited United States v. Donahue Industries, Inc., 905 F.2d 1325 (9th Cir. 1990), to bolster their claim of imputed knowledge, but that case differs greatly from this one. In Donahue, the levy notice referred to "Donahue Printing" instead of "Donahue Industries, Inc." Id. at 1332. However, because the bank had responded in the past to the IRS summons with a letter indicating that it acknowledged that both names referred to the same entity, the "deficiencies" in the levy notice did not excuse the bank's refusal to honor the levy. Id.

The facts of this case part company with those of Donahue. If there had been a Donahue-like miswording (for example, if the levy listed "Marine Pacifica" instead of "Marina Pacifica"), Chase would presumably have found the correct account, if not by its name search, then certainly by its taxpayer identification number search. Therefore, while it may be true that, as the Ninth Circuit observed in Donahue, "deficiencies" in levy notices necessarily do not constitute "reasonable cause" under S 6332 for dishonoring a levy, id. at 1332, the complete absence of the name "Marina Pacifica" or its taxpayer identification number is not simply a deficiency. Rather, it is an omission of any marker by which Chase could identify Marina Pacifica as the taxpayer subject to levy. This omission resulted in the levy being ineffective as to accounts under that name.

B. The 1992 levy

The District Court erred in applying Virgin Islands law regarding levies. Instead, it should have followed the pertinent Internal Revenue Code ("IRC") provisions. Virgin Islands income tax law "mirrors" the IRC:

> The income-tax laws in force in the United States of
> America and those which may hereafter be enacted

shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said islands.

48 U.S.C. S 1397. The District Court mistakenly reasoned that, because the provisions at issue in this case are "administrative and procedural in nature," Virgin Islands

income tax law should apply. Chase Manhattan Bank, 168 F. Supp. 2d at 486. On the contrary, the IRC does not distinguish between "substantive" and "nonsubstantive" income tax provisions, and neither do we. Chase Manhattan Bank v. Gov't of V.I., Bureau of Internal Revenue , 300 F.3d 320 (3d Cir. 2002). Therefore, we apply federal law governing liens and levies.

We begin with a general review of the subject. Section 6321 of the IRC authorizes the Government to obtain a lien against a delinquent taxpayer:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. S 6321.

The Government's lien is not self-executing, however. United States v. Nat'l Bank of Commerce, 472 U.S. 713, 720 (1985). The Government must select between two alternative options when enforcing its lien. In the first, a 26 U.S.C. S 7403(a) lien foreclosure suit, the Government files an action in District Court to enforce the lien. This is an involved proceeding that actually determines the priorities of the various claimants. Id.

The second, and more common, lien enforcement mechanism is 26 U.S.C. S 6331's administrative levy. This is a "provisional remedy, which does not determine the rights of third parties until after the levy is made, in postseizure administrative or judicial hearings." Nat'l Bank of Commerce, 472 U.S. at 731 (emphases omitted). 26 U.S.C. S 6332 requires that the party holding the levied property relinquish it. Unlike S 7403(a)'s lien foreclosure suit, S 6331's administrative levy does not determine the relative priority of creditors' claims, either amongst themselves or in relation to the Government's lien. Instead, it simply "protect[s] the Government against diversion or loss while such claims are being resolved." Nat'l Bank of

Commerce, 472 U.S. at 721. In essence, it takes a snapshot of the property at the time of levy, freezing it until the court can sort out the rights of competing claimants.

Sometimes someone other than the taxpayer holds property that is subject to an administrative levy. These third parties understandably are apprehensive about turning over property they hold to the Government, especially if it is later proved that another creditor, or the taxpayer, had a superior claim. Section 6332(e) accordingly provides that those who honor an administrative levy "shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment." 26 U.S.C. S 6332(e). Dishonoring the levy, on the other hand, exposes a third party to substantial liability: "failure to surrender the property upon service of a tax levy will render the third party personally liable to the government for the value of the property and for additional penalties if the noncompliance was not reasonable." Congress Talcott Corp. v. Gruber , 993 F.2d 315, 318 (3d Cir. 1993). Besides "a sum equal to the value of the property or rights not . . . surrendered . . . together with costs and interest," the statute imposes an additional 50% penalty upon "[a]ny person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand," if the refusal to surrender property was "without reasonable cause." 26 U.S.C.S 6332(d).

There are only two exceptions to the rule that a third-party holder of levied property must turn it over to the Government. The first is where the taxpayer's property is "subject to a prior judicial attachment or execution." Nat'l Bank of Commerce, 472 U.S. at 722 (citation omitted). The second is where the taxpayer no longer has a property interest in the levied property, so that the third party is "neither in possession of nor obligated with respect to property or rights to property belonging to the delinquent taxpayer." Id.

Both exceptions are logical. In the first case, the property has already been judicially determined to be the subject of another attachment or execution proceeding, so to relinquish it to the Government makes little sense, as it

would be both inefficient and confusing. In the second, the levy does not apply because the taxpayer has no proprietary interest in the property in question. The Government's right to levy property extends only to the taxpayer's property: the IRS "steps in the taxpayer's shoes . . . [and] acquires whatever rights the taxpayer himself possesses." Id. at 725 (citation omitted). If the taxpayer has no interest in the property, the Government's lien cannot attach. Because the first exception is not in play here, we need not discuss it. Therefore, we turn to the second: did LIV and/or its successors -- Marina Pacifica and Lonesome

Dove4 -- retain any property rights in the CD at the time of the 1992 levy.

Section 6331's language is extremely broad, covering"all property and rights to property" owned by the taxpayer. Congress Talcott, 993 F.2d at 319 (quoting Nat'l Bank of Commerce, 472 U.S. at 719-20). Courts look to both state and federal law to answer whether a taxpayer owns "property or rights to property" held by another. State law determines the nature of the legal interest the taxpayer has in the property. Nat'l Bank of Commerce, 472 U.S. at 722. However, federal law assigns consequences to the state law rights. Id. "Thus, because the United States Congress meant to attach a broad meaning to the statutory language 'all property and rights to property,' courts must liberally identify property rights created under state law." Congress Talcott, 993 F.2d at 319 (citation omitted).

In this context, for a levy to attach requires only a small property interest. "[E]ven if others claim an interest in the property and the taxpayer's interest may be quantified as but a modicum, the property remains subject to attachment by levy and must be surrendered until ultimate ownership can be resolved." Id. at 319 (citing Nat'l Bank of Commerce, 472 U.S. at 721-22). National Bank of Commerce held that joint accounts were subject to administrative levy. Although the co-owner had a right to the accounts, the taxpayer's "unqualified right to withdraw the full amounts on deposit in the joint accounts without notice to his

_____

4. For convenience, unless the context requires otherwise, LIV and its successors are hereinafter jointly and severally referred to as "LIV."

11

codepositors" was a sufficient property interest to subject the entire amount to administrative levy. 472 U.S. at 723-24. In Congress Talcott, we concluded that even if the third-party possessor of the property had a right of setoff against the property, the taxpayer retained a property interest until the setoff was exercised. 993 F.2d at 320.

A secured creditor who obtains a perfected security interest before the Government's lien attaches has priority over the Government, and its security interest will prevail in a wrongful levy suit. The administrative levy"settles no rights in the property subject to seizure." Nat'l Bank of Commerce, 472 U.S. at 728 (citation omitted). However, if the property is levied upon, the secured creditor must turn the property over to the Government, or risk incurring the penalties described above. Congress Talcott, 993 F.2d at 318.

The proper recourse for secured creditors with a priority interest in levied property is to relinquish the property and then file a wrongful levy action under 26 U.S.C.S 7426(a):

If a levy has been made on property or property has

been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

Such a creditor has nine months from the date of the levy to file suit for wrongful levy. 26 U.S.C. S 6532(c)(1). The creditor may then prove the priority of its interest in court and recover the property or its value. 26 U.S.C. S 7426(b)(2).

This mechanism may seem overly burdensome to the priority creditor, who must surrender property when it knows it will ultimately prevail over the Government (provided it follows the procedural prerequisites, e.g., filing a S 7426 wrongful levy suit within nine months). However, public policy supports this result: just as a sheriff in executing a judgment would levy (or seize) a debtor's property and then let the court sort out the rights of

competing claimants, so here the administrative levy merely freezes the various assets until rights can be established.

The alternative is much less appealing. To allow every party who claimed priority to hold on to, and dispose of, property on which the Government levies would result in chaos. All creditors in possession of levied taxpayer property would claim that their interest was prior, and the Government would find it difficult to collect on liens. The administrative levy is a "quick [and] relatively inexpensive" way to serve the "[n]eed for our government promptly to secure its revenues." Nat'l Bank of Commerce , 472 U.S. at 721 (citation omitted).

In this case, Chase Manhattan's decision not to turn over the $606,167.51 was unreasonable. The VIBIR properly obtained a lien, and on May 20, 1992, served Chase with a notice of levy. Section 6332 instructs us that, as a nontaxpayer holding property that had been levied, Chase was obligated to turn over the money, unless one of two exceptions applied. As already noted, the first exception-- that the money was subject to prior judicial attachment or execution--does not apply. But as to the second exception, Chase argues that it exercised its right of setoff, and thus the CD was not LIV's property at all.

The parties agree that New York law governs, so we apply that law to determine LIV's property interest in the CD. To review, events occurred in the following sequence: at the time of the 1992 levy, the CD's remaining balance was $606,167.51. On the day of the levy, May 20, 1992, Chase wired $6,167.51 to Lonesome Dove's account, leaving $600,000. Chase later sent a letter to John deJongh, its local counsel in the Virgin Islands, requesting an opinion

on the advisability of setting off $600,000. DeJongh did not vouch for the priority of Chase's lien, but agreed that the setoff should occur. Chase then authorized the setoff, which was completed June 5, 1992, sixteen days after the levy.[5]

_____

5. Because we perform de novo review of the summary judgment, and so have determined for ourselves what facts are undisputed and what reasonable inferences can be drawn in Chase's favor (as the non-moving party) from those undisputed facts, we will not respond separately to Chase's contentions concerning inappropriate fact-finding by the District Court.

Chase first argues that its right of setoff, acquired in 1986 when it loaned Lansdale $1.2 million secured by the initial CD, extinguished all of LIV's property rights. Appellant's Br. at 45. Chase had a perfected security interest in the CD, with priority over the tax lien, and therefore, it contends, LIV had no property right in the CD.[6] Appellant's Br. at 46-47. This argument fails because it amounts to a claim of priority, and that (perhaps counterintuitively to a secured creditor) is not a proper ground for resisting an administrative levy. Chase could have properly raised a claim of priority only by turning over the levied property and then bringing a wrongful levy suit under S 7426 within the prescribed nine-month time period.

If Chase were to exercise its right of setoff before an IRS levy, it would gain complete ownership of the property, and LIV would lose any property interest in it. See generally Barkley Clark & Barbara Clark, 2 The Law of Bank Deposits, Collections and Credit Cards P 18.01 (rev. ed. 2002). There would then be no need for Chase to comply with the levy, because this would trigger the second permissible reason for dishonoring it, the defense that the taxpayer has no proprietary interest in the property levied against.

But what happens when a right of setoff is possible but not exercised before an IRS levy? Congress Talcott answers this question, for it rejects the idea that a mere right of setoff extinguishes a taxpayer's interest in property. In Congress Talcott, the IRS served a notice of levy on Congress Talcott, which, pursuant to a factoring agreement, held cash collateral in an account to which the taxpayer, Gruber, lacked access. 993 F.2d at 317. Congress Talcott refused to turn over the account balance, arguing that it had a superior interest in the account by virtue of the agreement containing the cash collateral provisions. We held that because Gruber's debt had not matured, and

_____

6. As a preliminary matter, we note that even if we were to accept this argument, it does not justify Chase's decision to wire the $6,167.51 to Lonesome Dove's account, rather than forwarding the funds to the VIBIR. The balance due on the loan was $600,000.00. Even by its own

logic, Chase should have turned over the excess funds to the VIBIR.

"although Congress had absolute control and discretion over the use of the funds, Congress was to return to Gruber any amount not applied to Seegull's debt once the debt was satisfied." Id. at 320. As Gruber possessed a property interest in the account, Congress Talcott was unjustified in refusing to turn over the balance. Id. at 321.

Other circuit courts have also rejected the idea that an unexercised right of setoff excuses a bank from honoring a levy. In United States v. Cache Valley Bank, 866 F.2d 1242 (10th Cir. 1989), the bank argued that because it could have offset the taxpayer's funds against outstanding loans, it had an interest superior to the Government's. The Tenth Circuit rejected this argument, observing that "the lien attached to the deposits in the taxpayer's account before the bank exercised its right of setoff." Id.  at 1245 (emphasis in original). Similarly, in United States v. Sterling Nat'l Bank & Trust, 494 F.2d 919, 922 (2d Cir. 1974), the Second Circuit found that until a bank exercised its right of setoff, the taxpayer retained a property interest in his account. In contrast, because Pennsylvania gives banks an automatic right of setoff, Pittsburgh National Bank v. United States, 657 F.2d 36 (3d Cir. 1981), held that a taxpayer default alone was enough to constitute the "exercis[ing]" of the right of setoff. Id. at 39. But no such automatic right of setoff exists under New York law, Marine Midland Bank v. Graybar Electric Co., 41 N.Y.2d 703, 708 (N.Y. 1977), and Lansdale was not in default in any event. Thus, Chase's right of setoff upon a default does not constitute an exercise of the right.

Chase next argues that it "effectively" exercised its setoff prior to the 1992 levy because it had restricted LIV's access to the $600,000, refusing to allow it withdrawals that would drop the balance below that threshold, and thereby exercising the functional equivalent of a setoff before the notice of the levy. Appellant's Br. at 46-7.

Restriction of LIV's right to withdraw did not extinguish its property interest in the CD. The documents indicate that Chase had to demand payment prior to exercising its right of setoff. No demand was made until after the 1992 levy. Moreover, the fact that Chase inquired of local counsel about the advisability of exercising its right of setoff a week

after receiving the notice of levy indicates that it did not believe that it had already exercised the right simply by restricting LIV's access.

The Eleventh Circuit has found that "[u]nder New York law setoff is complete when three steps have been taken: a decision to exercise the right, some action that

accomplishes the setoff, and some record evidencing that the right of setoff has been exercised." Gregg v. U.S. Industries, 715 F.2d 1522, 1539 (11th Cir. 1983) (citing Clarkson Co. v. Shaheen, 533 F. Supp. 905, 925 (S.D.N.Y. 1982), and Aspen Industries, Inc. v. Marine Midland Bank, 74 A.D.2d 59, 62 (N.Y. App. Div. 1980), rev'd on other grounds, 52 N.Y.S.2d 316 (N.Y. 1980)). Chase did not take these steps until after the 1992 levy, when it consulted local counsel as to the advisability of setting off, had the setoff authorized, and finally completed it over a week later. Similarly, the bank in Congress Talcott did not withdraw funds from the taxpayer's account until four months after the notice of levy. 993 F.2d at 321. We held that only at the time of this withdrawal was the right of setoff exercised. Id.

These decisions underscore the obvious. A setoff-- a nonjudicial remedy -- is a taking transferring the debtor's or pledging party's asset to the creditor bank. James J. White & Robert S. Summers, Uniform Commercial Code S 21-7, at 401 (4th ed. 1995). Prior to the taking, the property still belongs to the debtor or pledging party. See Sterling Nat'l Bank, 494 F.2d at 922.

Chase's emphasis that Lansdale and LIV had no "unfettered right to claim funds," and no"unilateral right to withdraw the $600,000," Appellant's Br. at 48, reveals that it misses the point regarding the nature of our inquiry. The taxpayer in Congress Talcott similarly lacked an "unfettered" right of withdrawal; indeed, he was completely denied access to the account. Nevertheless, we held that he retained a property interest in the account. The same is true here.

To recapitulate, the second exception to an administrative levy is not available here. Because Chase did not exercise its setoff right until after it received the notice of levy, LIV retained a property interest in the CD. Chase

16

should have turned over the CD proceeds to the VIBIR, and then filed a S 7426 wrongful levy suit within nine months of the levy. Because it did not take these measures, it is liable for "a sum equal to the value of the property or rights not surrendered," 26 U.S.C. S 6332(d) -- $606,167.51, plus costs and interest.7

* * * * *

Under the circumstances presented, we conclude that Chase did not dishonor the 1991 levy. However, we hold that Chase's dishonoring of the 1992 levy was impermissible because LIV retained a property interest in the CD at the time of levy. We therefore affirm in part and reverse in part.8

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

_____

7. Although Chase's refusal to honor the levy was unreasonable, the 50%
penalty does not apply because on June 30, 1994, the parties stipulated
for dismissal with prejudice as to a penalty, in exchange for Chase
naming Lansdale as a third-party defendant. Chase Manhattan Bank,
168 F. Supp. 2d at 485.

8. As already noted, supra n.2, we dismiss Lansdale's appeal for lack of
standing.

17