*284 OPINION OF THE COURT
Anthony V. Gazzara, J.
The parties have agreed to have this matter determined on the stipulated set of facts as set forth below.
STIPULATED SET OF FACTS
On August 23, 1990, a judgment was obtained by Bernard L. Broome (plaintiff) against Barton Fleishman (Fleishman) and Gerald Ottinger (Ottinger) in the New York City Civil Court, Queens County under index number 12930/90 in the sum of $3,022.98.
On May 1, 1991, Ottinger filed a petition in bankruptcy in the United States District Court in Boston, Massachusetts, under file number 91-13708.
The plaintiff was never listed as a creditor of Ottinger in his petition in bankruptcy. Defendant Citibank was unaware of who was, or who was not, listed as a creditor.
Ottinger was discharged in the bankruptcy proceeding on September 25, 1991.
On September 30, 1991, Ottinger made a deposit in the amount of $5,500 in account number 62076254 at defendant Citibank, N. A. This was almost five months after his petition in bankruptcy was filed.
On October 2, 1991, the defendant received a restraining notice from Broome.
Between October 3, 1991 and October 16, 1991, the following deposits were made in Ottinger’s account: $1,273.10; $1,273.10; $2,937.62; $2,546.20; and $1,273.10. Between October 18, 1991 and November 5, 1991, five deposits were made which totalled $22,910.06. From November 20, 1991 through December 13, 1991 an additional $9,035 was deposited.
On October 9, 1991, defendant submitted an affidavit which set forth that it had on its books an account for Ottinger with a credit balance in excess of $3,220.98.
On October 21, 1991, the defendant became aware of the petition in bankruptcy after receiving a telephone call from its customer, Ottinger.
A follow-up copy of the petition in bankruptcy, which had been filed on May 1, 1991, was received by the defendant.
The defendant never forwarded deposits made after September of 1991 from this account to the United States trustee in *285 bankruptcy. After the restraining order was received by defendant, monies in excess of $3,700 were released from the account by defendant to or on behalf of Ottinger.
The defendant never forwarded monies from this account to the United States trustee.
Defendant was never advised that the plaintiff was a creditor of Ottinger in his petition in bankruptcy.
On January 3, 1992, an execution with notice to the garnishee was prepared by the plaintiff.
On January 8, 1992, the New York City Marshall, Kenneth Brand, served the execution with notice to the garnishee upon the defendant.
Although the defendant had the income execution in its possession and there were funds in the account, defendant never released the funds to the Marshall.
The defendant, when served with the execution with notice to the garnishee, advised the Marshall that because a bankruptcy petition had been filed, the income execution was not honored.
When the restraining notice was served in October, the monies were in the account solely in the name of Gerald Ottinger. When the defendant bank was advised that there was a bankruptcy proceeding they released the restraint. Once the restraint was released, Ottinger added another party to the account and the account became a joint account. The funds which were then in the account were subsequently turned over to Ottinger and/or the other party that had been named to the account subsequent to the filing of the restraining notice.
The plaintiff never gave authorization to the defendant to release the funds held pursuant to the restraining notice.
The defendant never advised plaintiff that they had released the funds that were being held pursuant to the restraining notice.
parties’ contentions
The plaintiff contends that, since he was not listed in the petition in bankruptcy as a creditor of Gerald Ottinger, his debt was never discharged and the defendant bank should have honored the restraining notice filed by the plaintiff. The only exception to this rule would have been had these monies been sent to the United States trustee in bankruptcy. Since such monies were not forwarded to the trustee in bankruptcy, the restraining notice should have been honored and the monies *286 turned over to the plaintiff when the execution with notice to the garnishee was submitted by the New York City Marshall. Since the restraining notice was never vacated, the defendant bank should have honored the execution with notice to the garnishee.
The defendant contends that, once it was notified that there was a petition in bankruptcy filed by Ottinger, it properly released the restraint on the account because of the operation of section 362 of the 1978 Bankruptcy Code (11 USC).
CONCLUSIONS OF LAW
Initially, this court notes that, although requested to do so by the court, neither party has submitted a memorandum of law. Further, the information provided with respect to the bankruptcy proceeding is extremely limited.
In any event, based upon consideration of the stipulated facts, this court finds in favor of the plaintiff in the sum of $3,022.98.
As stated in Aspen Indus. v Marine Midland Bank (52 NY2d 575, 579): "Among the various enforcement devices available to a judgment creditor under CPLR article 52 is the restraining notice. A party served with such a notice 'is forbidden to make or suffer any sale, assignment, transfer or interference with any [of the judgment debtor’s] property * * * to any person other than the sheriff, except upon direction of the sheriff or pursuant to an order of the court’. (CPLR 5222, subd [b].) Thus, the restraining notice serves as a type of injunction prohibiting the transfer of the judgment debtor’s property. This notice may be served on either the judgment debtor himself or, as in the present case, upon a third-party 'garnishee’ — a person who owes a debt to the judgment debtor or who is in possession of property in which the judgment debtor has an interest. (CPLR 105, subd [i].) When served upon a garnishee, the injunctive effect of the restraining notice continues for one year or until such time as the judgment is satisfied or vacated, whichever occurs first, and extends to property both 'then in and thereafter coming into possession or custody’ of the garnishee. (CPLR 5222, subd [b]; see, generally, Siegel, New York Practice, § 508.)”
The Court of Appeals noted further therein (Aspen Indus. v Marine Midland Bank, at 580, supra) that: "However, violation of the restraining notice by the party served is punishable by contempt (CPLR 5222, subd [a]; 5251) and subjects the garnishee to personal liability in a separate plenary action or *287 a special proceeding under CPLR article 52 brought by the aggrieved judgment creditor. (See, e.g., Nardone v Long Is. Trust Co., 40 AD2d 697; Mazzuka v Bank of North Amer., 53 Misc 2d 1053; Matter of Sumitomo Shoji N. Y. v Chemical Bank N. Y. Trust Co., 47 Misc 2d 741, affd 25 AD2d 499.)”
The instant situation is complicated by the existence of the automatic stay which arose pursuant to 11 USC § 362 when the judgment debtor, Ottinger, filed a petition in bankruptcy prior to the service upon defendant of the restraining order.
1978 Bankruptcy Code (11 USC) § 362 provides, in pertinent part, that:
"(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5 (a) (3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of * * *
"(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title * * *
"(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
"(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.”
As noted in Maguire v Puente (120 Misc 2d 871, 874): "The purpose of the stay provisions is to give a debtor the opportunity to formulate plans for repayment and reorganization with protection from an uncontrolled scramble for the debtor’s assets in a variety of un-co-ordinated proceedings in different courts (Matter of Holtkamp, 669 F2d 505, 508; Matter of Frigitemp Corp., 8 BR 284, 288-289), and also to preclude one creditor from pursuing a remedy against the debtor to the disadvantage of other creditors. The purpose, of course, is to promote the orderly administration of the debtor’s estate (Triangle Mgt. Servs. v Allstate Sav. & Loan Assn., 21 BR 699, 700).”
Indeed, the legislative history of this section clearly supports such holding. As noted in In re Roberts (175 Bankr 339, 343):
"The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the *288 debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him to bankruptcy.
"The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor’s property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors; Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor’s assets prevents that. Notes of the Committee on the Judiciary, H.R. Rep. No. 595, 95th Cong., 1st Sess. 340-41 (1977), reprinted in 1978 U.S.C.C.A.N.- 5963, 6296-97.”
It is, of course, the defendant’s contention that, once it was notified that there was a petition in bankruptcy filed by Ottinger, it properly released the restraint on the account because of the operation of such automatic stay.
However, our courts have interpreted the effect of a stay on a restraining notice in a different manner.
As stated in Medi-Physics, Inc. v Community Hosp. (105 Misc 2d 574, 575):
"A restraining notice operates as an injunction. It merely restrains the party upon which it is served from making any transfer of the judgment debtor’s property in its possession. A restraining notice gives the creditor no lien on the judgment debtor’s property and 'no special priority in a race with other judgment creditors’. (Siegel, Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR, C5222:8.)
"Likewise, the stay provisions of section 362 of the Bankruptcy Code has no effect upon the restraining notice. A stay has the effect of suspending enforcement and may prevent the judgment creditor from coming into possession of the funds. A stay has no effect on a restraining notice which merely acts as an injunction. (Nardone v Long Is. Trust Co., 40 AD2d 697.)”
Nardone v Long Is. Trust Co. (40 AD2d 697, supra [cited with approval in Medi-Physics, Inc. v Community Hosp., supra]) involved a stay which resulted from the judgment debtor’s obtaining an ex parte order to show cause staying the petitioner, judgment creditor, from enforcing his judgment pending a hearing on the motion. A restraining notice had been served on the bank but the bank continued to allow the judgment creditor to write checks against the account after being informed of the stay in the ex parte order.
*289 The Appellate Division, Second Department, held therein that: "In our opinion the stay contained in the ex parte order did not serve to suspend the effectiveness of the restraining notice. It merely prohibited petitioner [the judgment creditor] from gaining actual possession of the judgment debtor’s funds. Were the rule otherwise, any judgment debtor could obtain such an order, without notice to the court that a restraining notice had been served, or to the judgment creditor, and recover his property theretofore properly made the subject of the restraining notice.” (Nardone v Long Is. Trust Co., supra, at 697.)
In the instant case, there is no dispute that the defendant bank was properly served with the restraining order or that the effective date of such order had not yet expired.
Therefore, based upon the facts as stipulated to by the parties, this court finds that the defendant bank violated the restraining order by releasing the funds in the judgment debtor’s account to someone other than the Marshall pursuant to the restraining notice. This court notes that such funds could also have been properly released to the trustee in bankruptcy if an appropriate court order had been obtained (see, CPLR 5222 [b]).
By virtue of its violation of the restraining order, this court further finds that the defendant bank is liable to the plaintiff, the judgment creditor injured by the release of the judgment debtor’s funds, in the amount of the underlying judgment, that is, $3,022.98.
Accordingly, judgment is granted in favor of the plaintiff in the amount of $3,022.98.