OPINION OF THE COURT
Gerard M. Weisberg, J.
Claimant the Syndicate Building Corporation and defendant City University of New York (CUNY) both move for summary judgment. The facts are not in dispute. On October 24, 1988, claimant recovered a judgment in the Civil Court of the City of New York, County of New York, against Joseph Joyner, Jr., doing business as Mercury Composition doing business as Royal Printing & Design (Royal), in the amount of $26,183.70. Claimant thereafter learned that Royal was doing business with Hunter College (Hunter or College), a senior institution of CUNY. It mailed a so-ordered restraining notice and information subpoena to Hunter on April 14, 1989 which was received by it on April 17, 1989. Prior thereto, on April 6, 1989, the College had submitted a voucher to the Department of Audit and Control of the State Comptroller with respect to a Royal invoice. On April 18, 1989, that office issued a check in the amount of $8,080 payable to Royal. The check was paid on or about May 8, 1989 and apparently no attempt was made to stop payment on it in the interim. Claimant thereafter commenced suit in this court against CUNY for violating the restraining notice. (See, e.g., Conde v Anton Adj. Co., 133 Misc 2d 998 [duty on drawer to stop payment on receipt of restraining notice].) The claim was filed late and was dismissed. (Syndicate Bldg. Corp. v City Univ., 151 Misc 2d 492.)
In addition to opposing the dismissal motion, claimant successfully cross-moved to file a late claim. In resisting that application, CUNY relied upon CPLR 5222 (a) and Remo Drug Corp. v State of New York (145 Misc 2d 300). The former requires a restraining notice served upon a department or agency of the State or upon an institution under its direction to be served, among others, upon the Department of Audit and Control of the State Comptroller. The latter held the failure to do so to be fatal to a cause of action for a violation *900 of the restraining notice. Concededly such was not done here. CUNY then argued that since it was essentially a State agency, the restraining notice served on it without being served on the Department of Audit and Control was defective. .We disagreed.
We first observed that while for some purposes CUNY is treated as a State agency for others it is not. Thus, specifically, we noted that although the major funding for CUNY was provided by the State and disbursed by the State Comptroller, "on at least some occasions CUNY either acts as its own disbursing agent or the Comptroller of the City of New York acts in that role.” (Syndicate Bldg. Corp. v City Univ., 151 Misc 2d 492, 496, supra.) Since no evidence was submitted at that time that the offending payment had been made by the State, we refused for the purposes of that motion to hold the parties subject to CPLR 5222 (a). We did state however: "Whether such an interpretation would be required in another case, such as where the State was making payment on CUNY’s behalf, is an issue which we need not decide today.” (Syndicate Bldg Corp. v City Univ., supra, at 497.)
As indicated above, it has now been established that the check issued in apparent violation of the restraining notice came from the State. We therefore reach the reserved issue: is CUNY protected by CPLR 5222 (a)?
Under the express language of the statute, it applies to "an institution under [the State’s] direction.” (CPLR 5222 [a].) The uncontroverted evidence submitted on this motion shows that the State directed CUNY institutions not to pay invoices in excess of $250 from their own accounts but to prepare a voucher and forward it with the invoice to the office of the State Comptroller. Consequently we conclude that, at least with respect to this payment, Hunter College was an institution under the State’s direction.
Moreover, the very facts of this case support the wisdom of finding CPLR 5222 (a) applicable. We take judicial notice that CUNY is a large university system made up of numerous campuses but with the payment of invoices being disbursed from a separate but centralized location, to wit, the office of the State Comptroller. (See, Education Law § 6201 [2]; § 6202 [5]; §§ 6203, 6224 [5].) Service of the restraining notice at this office, therefore, is the only way to safeguard against a mistaken violation. (Accord, Remo Drug Corp. v State of New York, 145 Misc 2d 300, supra.)
*901 As an alternative theory, claimant would predicate liability upon Hunter College’s conceded failure to timely answer the information subpoena. Claimant points out, correctly, that there is no statutory requirement that an information subpoena be served on the State Comptroller. (Compare, CPLR 5222 [a], with 5224 [a] [3].) Claimant affirms that, although properly served, Hunter College did not respond to the subpoena until May 17, 1989, far beyond the seven days allowed. (See, CPLR 5224 [a] [3].) Claimant argues that had the College answered the subpoena in a timely manner, it would have learned of the transfer to Royal and have been able to restrain the Comptroller from honoring the check before it was paid. Defendant has not disputed this. The issue remains, however, does this state a cause of action?
Claimant has alleged, and submitted evidence to show, that CUNY violated CPLR 5224 (a) (3) "negligently” by not responding within the time limits contained therein. CPLR 5251 provides that the: "Refusal or willful neglect of any person to obey a subpoena or restraining notice issued * * * pursuant to this title * * * shall each be punishable as a contempt of court.” Under this provision, to hold CUNY in contempt, negligence is insufficient, it must be an international or willful violation. (Oppenheimer v Oscar Shoes, 111 AD2d 28; Matter of Ripley v Risedorph, 23 AD2d 942; Lanact Corp. v McDowell, 95 NYS2d 734 [App Term].) Moreover, the fact that CUNY was a stranger to the dispute between claimant and Royal, and thus gained nothing from the violation, suggests that the late compliance was not intentional or willful. (Matter of Ripley v Risedorph, 37 Misc 2d 631, affd 23 AD2d 942, supra.) Thus, contempt will not lie.
On the other hand, where a restraining notice has been violated, even if only through negligence, a cause of action for damages also exists, case law making it clear that both remedies, contempt and a damage action, are available. (Aspen Indus. v Marine Midland Bank, 52 NY2d 575; Security Trust Co. v Mager Homes, 92 AD2d 714.) Here, however, the cause of action cannot be predicated on a negligently violated restraining notice but on a negligently violated information subpoena. The issue therefore reduces to whether the same rule applies, i.e., does a cause of action for damages exist for the negligent violation of an information subpoena?
Whether a statute creates a cause of action in damages for its violation is ultimately a question of legislative intent. The *902 factors to be examined in determining that intent are: the remedies, if any, the Legislature explicitly provided; whether claimant is one of the class for whose benefit the statute was enacted; and most importantly, whether such remedy is consistent with the legislative scheme. (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314.)
Here the Legislature provided only one remedy for a violation of CPLR 5224 (a) (3), to wit, contempt. On the other hand, claimant, as a judgment creditor, is a member of the class intended to be benefitted by that statute, Ultimately, however, we think the consequences of finding a cause of action other than contempt for its violation is inconsistent with the scheme of CPLR article 52.
We find there are clear distinctions to be drawn between restraining notices and information subpoenas. Where a person violates the former, the potential for liability and its extent are evident: having been ordered to hold property but having transferred it, a reasonable person should expect to answer therefor, with the damages not to exceed that which was transferred. On the other hand, is a reasonable person to know that, if the answers to an information subpoena are mailed back one day late, and an asset worth millions of dollars should disappear during the interim, he or she will be liable therefor?
CPLR 5224 (a) (3) dates back to the advent of the CPLR and its antecedents even further. (See, Civ Prac Act § 782-a.) Despite all that time, we have been unable to locate any authority for imposing essentially unlimited liability on a stranger to a lawsuit based on unintentionally tardy responses to an information subpoena. In the absence of a clear legislative directive, we will not create such a Draconian remedy now.
For the foregoing reasons, the defendant’s cross motion for summary judgment dismissing the claim is granted, and claimant’s motion for summary judgment is denied.