[675 NYS2d 38]

In the Matter of MAEL APOLLON et al., Respondents, v RUDOLPH GIULIANI, as Mayor of the City of New York, et al., Respondents, and CITY UNIVERSITY OF NEW YORK et al., Appellants.

First Department, June 25, 1998

## APPEARANCES OF COUNSEL

*Ronald B. McGuire,* New York City, for respondents.

*Janet L. Zaleon* of counsel (*Barry P. Schwartz* on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for City of New York, appellant.

*Jeffrey I. Slonim* of counsel, New York City (*Dennis C. Vacco, Attorney-General,* attorney), for State of New York, appellant.

## OPINION OF THE COURT

ROSENBERGER, J.

The City University of New York (CUNY) and the State of New York (the State) appeal from an award of attorneys' fees pursuant to the New York State Equal Access to Justice Act (EAJA; CPLR art 86), entered after the petitioners-respondents (henceforth petitioners) prevailed on some of their claims in a CPLR article 78 proceeding challenging a 1995 tuition increase for CUNY's community colleges. At the time, petitioners were community college students.

The petition alleged that the budget enacted by the City of New York (the City) in June 1995 and the community college tuition increase subsequently passed by the CUNY Board of Trustees violated the 1995 Maintenance of Effort Law. Petitioners further contended that the City ignored its legal obligations by engaging in a series of improper transfers of funds designed to enable the City to evade its statutory obligations, and which deprived both CUNY and its students of funds that would permit community colleges to function without tuition increases.

CUNY community colleges are funded by a combination of State contributions, student tuition and funding from the City as "local sponsor". The funding of the community colleges is governed primarily by Education Law § 6304. Section 6304 (1) (d) provides: "Tuition and fees charged students shall be fixed

so as not to exceed in the aggregate more than one-third of the amount of operating costs of the community college."

The 1995 "Maintenance of Effort Law" (L 1995, ch 83, § 353) authorizes CUNY to raise the community college tuition for the 1995-1996 year above the limit set forth in the Education Law, but only if the "local sponsor contributions either in the aggregate or for each full-time equivalent student shall be no less than comparable amounts for the preceding year." In other words, to increase the tuition and fees beyond one third of operating costs, CUNY must obtain sufficient matching funds from the City to ensure that no more than 33.3% of the available budget for operating costs comes from tuition and fees.

In 1995, the CUNY Board of Trustees raised the community college tuition by $400 to $2,500. The City budget for that year only allocated $65.9 million for community college funding, though at least $75.2 million was needed to maintain the ratio required by the Maintenance of Effort Law.

To help make up the this deficit, CUNY and the City agreed that the City would allocate another $7.8 million to the community college budget. The CUNY Construction Fund would use $5.1 million of its excess reserves to pay part of the City's community college funding obligations, and would use another $3.9 million from the same source to pay part of the State's funding obligations. This arrangement still left a shortfall on the part of the City of about $1.5 to 1.9 million.

The Construction Fund is a public benefit corporation created by the State to provide for the construction and renovation of CUNY facilities. When tuition and fees are received by CUNY, the Construction Fund holds the money as collateral to insure the Fund's payment of CUNY's obligations to the New York State Dormitory Authority (from which CUNY leases dormitory facilities). The Construction Fund invests this collateral and uses the interest to pay its operating expenses. Unspent interest goes into the excess reserves.

Petitioners brought the underlying article 78 proceeding challenging the above funding scheme on several grounds. First, the CUNY Construction Fund's payment to the City allegedly violated Education Law § 6278 (b), which contemplates that the Fund's excess reserves will be "transferred to the city university for the support, maintenance and operation of such university." Alternatively, if this payment is deemed an indirect transfer of funds to CUNY, with the City as intermediary, it would allegedly enable the City to avoid the requirements of the Maintenance of Effort Law by intercepting money

that would normally be available to CUNY for other purposes. Finally, even if the $5.1 million transfer were legal, the City still allegedly owed CUNY at least $1.5 million.

In addition to asserting the authority of the trustees of the CUNY Construction Fund to transfer monies in satisfaction of the City's maintenance of effort requirements, respondents asserted that to make up the shortfall, the City would assume the responsibility of paying for certain of CUNY's community colleges' health insurance bills. These bills were created when approximately $1.475 million in health insurance bills came due after the close of the 1995 fiscal year for health insurance costs incurred prior to the close of the 1995 fiscal year, and another $402,000 in health care expenses needed to be charged to CUNY's 1996 fiscal budget to cover an unanticipated increase in health care costs.

By decision and order dated December 15, 1995 (*Matter of Apollon v Giuliani*, 168 Misc 2d 363, 374), the Supreme Court granted the petition to the extent of enjoining the City "from charging tuition in excess of one third of the operating budgets of the community colleges unless and until it provides CUNY with $1.5 million." In so doing, the court found that although Education Law § 6278 (b) clearly mandated that all CUNY tuition "together with" other funds that exceed the amounts necessary for the costs of rentals and other costs attributable to the administration of the CUNY Construction Fund be transferred to CUNY for the support, maintenance and operation of such university, public benefit corporations such as the CUNY Construction Fund had great flexibility in their methods of operation, and the trustees of the Fund, therefore, had the authority to use investment earnings to reduce the City's debt-service obligation.

The court additionally reasoned that while the City acknowledged its obligation to pay the extra health costs for CUNY, it was undisputed that it had not yet done so, and that therefore, the $1.5 million payment remained merely a pledge and until the City actually transferred or made an appropriate allocation of funds in its budget, the City had not met its statutory obligations under the maintenance of effort legislation.

The court accordingly found the fiscal year 1995-1996 tuition increase invalid unless and until the City appropriated $1.5 million for the CUNY community college budget, and that based on that conclusion, respondents were prohibited from imposing an increase in tuition until "it" was in compliance with the Maintenance of Effort Law. The court additionally

rejected petitioners' argument that the tuition increase was excessive and unnecessary, based, in part, upon the court's finding that $5.1 million was transferrable from the CUNY Construction Fund to satisfy the City's obligation.

Petitioners subsequently moved for costs and attorneys' fees under CPLR 8601 (a), which states, in pertinent part: "In addition to costs, disbursements and additional allowances * * * *a court shall award to a prevailing party,* other than the state, fees and other expenses incurred by such party in any civil action brought against the state, *unless the court finds that the position of the state was substantially justified or* that special circumstances make an award unjust. Whether the position of the state was substantially justified shall be determined solely on the basis of the record before the agency or official whose act, acts, or failure to act gave rise to the civil action" (emphasis added).

In granting petitioners' motion for fees, the Supreme Court found that petitioners were a "prevailing party" because they had succeeded in obtaining a major goal of the litigation by enjoining CUNY from collecting more than 33.3% of the community college operating budget from tuition and fees. The court reasoned that since all parties knew that the City's allocation to CUNY was at least $1.5 million short before the tuition increase was imposed, respondents' position was not "substantially justified". The court deemed the CUNY Board of Trustees to be a State agency—a necessary prerequisite for application of CPLR article 86, which consistently refers to the "state" as the party against which the award will be entered.

CUNY and the State have appealed from this order. CUNY argues, first, that with respect to community colleges, it is an agency of the City and not the State, and thus not subject to article 86; and second, that petitioners are not a "prevailing party" under CPLR 8602 (f). The State makes the related argument that it is not subject to liability because the only State agency sued in the underlying action was the CUNY Construction Fund, and petitioners did not prevail on their challenge to the Fund's actions. We find that appellants' contentions have merit and that the motion court erred in ordering appellants to pay attorneys' fees.

Under CPLR 8602 (g), "State" is defined as "the state or any of its agencies or any of its officials acting in his or her official capacity." The first issue, then, is whether CUNY is a State agency or a City agency for purposes of the instant motion. As a "separate and distinct body corporate" (Education Law

§ 6203), CUNY is not formally part of the State *or* the City. The definition of "state" in CPLR article 86 also does not include public corporations (*cf.*, Public Officers Law § 86 [3], the Freedom of Information Law, which defines "Agency" as including "public corporation[s]").

The Court of Appeals has required a case-by-case determination of whether an entity like CUNY, which is independent of the State but is an instrumentality of the State and performs a "fundamentally governmental" function, will be treated as the State for a particular purpose (*Grace & Co. v State Univ. Constr. Fund*, 44 NY2d 84, 88). "[W]hile for some purposes CUNY is treated as a State agency for others it is not" (*Syndicate Bldg. Corp. v City Univ.*, 159 Misc 2d 898, 900).

Whether CUNY is more closely analogous to a State agency or to a City agency depends in part on whether the case involves senior colleges or community colleges. For instance, the City defends and indemnifies community college employees in tort or civil rights cases (Education Law § 6205 [2]), while the State defends and indemnifies senior college employees in the same circumstances (Education Law § 6205 [1]). Litigation against a senior college must be brought in the Court of Claims, which is the court with exclusive jurisdiction over tort and contract claims against the State (Education Law ·§ 6224 [4]), while litigation against a community college may be brought in the Supreme Court just as was the instant proceeding (Education Law § 6224 [1]).

Case law determinations of CUNY's status appear to depend on similar distinctions (*compare, Scelsa v City Univ.*, 806 F Supp 1126, 1137, n 10 [community colleges receive money from City and thus can be considered non-State entities liable for 42 USC § 1983 damages], *with Perry v City of New York*, 126 AD2d 714 [where accident occurred on senior college campus, State, not City, would be liable for payment, and proper forum was Court of Claims]). When the challenged actions or disbursements are generated from or through the City (as is generally true where community colleges are at issue), CUNY should not be considered a State agency (*Syndicate Bldg. Corp. v City Univ.*, 151 Misc 2d 492, 496 [CUNY not deemed a State agency in context of project where funding goes through City Comptroller rather than State Department of Audit and Control]). As the instant case exclusively involves community colleges, and the challenged funding decisions all related to the City's obligation to fund those colleges, we hold that CUNY is not an agency of the State for purposes of the instant motion under CPLR

article 86. The motion court thus had no authority to order CUNY to pay attorneys' fees in this action.

Alternatively, even if CUNY were deemed a State agency, petitioners would not be entitled to article 86 relief because they do not satisfy the "prevailing party" standard, nor have they shown that CUNY's position was not "substantially justified."

Under CPLR 8602 (f), a "Prevailing party" is a plaintiff or petitioner "who prevails in whole or in substantial part". As the Court of Appeals held in *Matter of New York State Clinical Lab. Assn. v Kaladjian* (85 NY2d 346, 355): "[A] party has 'prevailed' within the meaning of the State EAJA if it has succeeded in acquiring a substantial part of the relief sought in the lawsuit. Thus, a 'prevailing party' is not one who has succeeded on merely 'any significant issue' in the litigation which achieved only 'some of the benefit' sought in bringing the lawsuit—which is the Federal standard [citation omitted]." In their proceeding against CUNY, petitioners did not achieve their goal of preventing the tuition increase, which instead was validated by the court on condition that the City appropriated the additional $1.5 million for CUNY. Neither did petitioners "prevail" against the State, since their challenge to the actions of the only other possible State agency herein, the CUNY Construction Fund, was entirely unsuccessful.

The State's position is deemed "substantially justified" if, taken as a whole, it had a reasonable basis in law and fact. The State's irrational interpretation of a particular issue does not automatically give rise to article 86 liability if the State's position in the case as a whole was not unreasonable. The reasonableness of the State's over-all position may be demonstrated in part by the fact that it prevailed on most of the other issues (*supra,* at 356). In finding that CUNY's position in raising tuition was not substantially justified because all parties agreed that the City's budget was short by $1.5 million, the motion court erred.

The City allowed this shortfall to develop because the City and CUNY initially believed that the 1994 Maintenance of Effort Law would not be re-enacted. When this assumption turned out to be mistaken, the City agreed to provide the $1.5 million by paying $1.7 million in health insurance costs for the community colleges. The money had not been paid at the time of the lawsuit simply because the City's budget was late. Furthermore, CUNY prevailed on the main issues in the case, namely, its ability to raise tuition and to use CUNY Construc-

tion Fund money to help the City comply with the Maintenance of Effort Law.

Accordingly, the order of the Supreme Court, New York County (Carol Arber, J.), entered September 9, 1996, granting petitioners-respondents' motion for an award of attorneys' fees under CPLR article 86, should be reversed, to the extent appealed from, on the law, without costs, and the motion should be denied.

SULLIVAN, J. P., NARDELLI, WILLIAMS and TOM, JJ., concur.

Order, Supreme Court, New York County, entered on or about September 9, 1996, reversed, to the extent appealed from, on the law, without costs, and petitioners-respondents' motion for an award of attorneys' fees under CPLR article 86 denied.