18-1162-cv
*Benzemann v. Houslanger & Assocs., PLLC*

# In the
# United States Court of Appeals
## for the Second Circuit

———

AUGUST TERM 2018

No. 18-1162-cv

ALEXANDER A. BENZEMANN,
*Plaintiff-Appellant,*

v.

HOUSLANGER & ASSOCIATES, PLLC, TODD E. HOUSLANGER, NEW
CENTURY FINANCIAL SERVICES,
*Defendants-Appellees,*

CITIBANK N.A.,
*Defendant.*

———

On Appeal from the United States District Court
for the Southern District of New York

———

ARGUED: APRIL 3, 2019
DECIDED: MAY 13, 2019

———

Before: KATZMANN, *Chief Judge*, WALKER and CABRANES, *Circuit Judges*.

———

Plaintiff-Appellant Alexander A. Benzemann ("Plaintiff") appeals from a judgment of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *Judge*) granting summary judgment in favor of Defendants-Appellees Houslanger & Associates, PLLC and Todd E. Houslanger on Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim. On appeal, the parties contest a single issue: whether Plaintiff's FDCPA claim is time-barred. We conclude that it is and therefore **AFFIRM** the District Court's March 23, 2018 judgment.

———

ANDREW J. TIAJOLOFF, Tiajoloff & Kelly LLP, New York, NY, *for Plaintiff-Appellant*.

ROBERT J. BERGSON, Abrams Garfinkel Margolis Bergson, LLP, New York, NY, *for Defendants-Appellees*.

———

JOSÉ A. CABRANES, *Circuit Judge*:

In a final attempt to salvage his Fair Debt Collection Practices Act ("FDCPA") claim against Defendants-Appellees Houslanger &

Associates, PLLC and Todd E. Houslanger (jointly, "Houslanger"), Plaintiff-Appellant Alexander A. Benzemann ("Plaintiff") asks us to endorse a novel—and potentially far-reaching—construction of the FDCPA's statute of limitations. We decline the invitation.

An FDCPA claim must be filed "within one year from the date on which the violation occurs."[1] Relying on certain language in our decision in *Benzemann v. Citibank N.A.* ("*Benzemann I*")[2], Plaintiff contends that an FDCPA "violation" does not "occur[ ]"—and the statute of limitations does not begin to run—until an individual is injured *and* receives "notice of the FDCPA violation."[3] The United States District Court for the Southern District of New York (Naomi Reice Buchwald, *Judge*) rejected Plaintiff's reading of *Benzemann I*, concluded that his FDCPA claim is time-barred, and granted summary judgment in Houslanger's favor. We agree and therefore **AFFIRM** the District Court's March 23, 2018 judgment.

## I.    BACKGROUND

We draw the facts, which are undisputed or presented in the light most favorable to Plaintiff, from the summary judgment record.[4]

---

[1] 15 U.S.C. § 1692k(d).

[2] 806 F.3d 98 (2d Cir. 2015) ("*Benzemann I*").

[3] Pl.'s Br. 9; *see also Benzemann I*, 806 F.3d at 103.

[4] *In re DeRogatis*, 904 F.3d 174, 180 (2d Cir. 2018) ("Because the appeals challenge orders granting summary judgment to defendants, we present here the

## A. The Restraining Notices

On April 21, 2008, Houslanger sent a restraining notice referencing a 2003 judgment against an individual named Andrew Benzemann ("Andrew") to Citibank, N.A. ("Citibank"), where Plaintiff held an account.[5] The notice named Andrew as the judgment debtor, but it listed Plaintiff's social security number and address. On April 30, 2008, Citibank "froze" Plaintiff's account. After Plaintiff's attorney notified Houslanger of the error, Houslanger withdrew the restraining notice, and Citibank lifted the freeze.

More than three years later, on December 6, 2011, Houslanger (somewhat inexplicably) sent Citibank a second restraining notice containing similar information—*i.e.*, naming Andrew as the judgment debtor but listing Plaintiff's social security number and address. Perhaps not surprisingly, Citibank froze Plaintiff's accounts. On December 13, 2011 Plaintiff became aware that he could not gain access to his Citibank accounts. He called Citibank, but the representative with whom he spoke gave him little information about why his accounts were unavailable. Distressed, Plaintiff contacted his attorney that same evening. The next day, Plaintiff learned that his accounts had been frozen pursuant to a restraining notice. By the evening of

---

version of the facts most favorable to [plaintiff]'s claims, and we draw all reasonable inferences in [his] favor.").

[5] Under New York state law, a "restraining notice serves as a type of injunction prohibiting the transfer of [a] judgment debtor's property." *Aspen Indus. v. Marine Midland Bank*, 52 N.Y.2d 575, 579 (1981).

4

December 15, 2011, the freeze had been lifted, and Plaintiff had regained access to his funds.

About one year later, on December 14, 2012, Plaintiff commenced this action, asserting, among others, the FDCPA claim at the center of this appeal.

### B. *Benzemann I*

On June 27, 2014, the District Court dismissed Plaintiff's FDCPA claim as untimely.[6] The District Court concluded that the alleged FDCPA violation occurred, triggering the one-year statute of limitations, when Houslanger mailed the restraining notice on December 6, 2011. Because Plaintiff commenced this action one year and eight days later, the District Court held that his FDCPA claim is time-barred.

In *Benzemann I*, we concluded that the District Court "erred in finding that the FDCPA violation 'occurred' when Houslanger sent the restraining notice."[7] Instead, we held that "where a debt collector sends an allegedly unlawful restraining notice to a bank, the FDCPA

---

[6] *See Benzemann v. Citibank N.A.*, No. 12 Civ. 9145 (NRB), 2014 WL 2933140, at *5–*8 (S.D.N.Y. June 27, 2014).

[7] *Benzemann I*, 806 F.3d at 103.

violation does not 'occur' for purposes of [the statute of limitations] until the bank freezes the debtor's account."[8]

Because the record was at that time unclear as to whether Citibank froze Plaintiff's accounts on December 13 or December 14, 2011, we remanded for further proceedings.[9] We also directed the District Court to consider, in the event it found that the freeze occurred on December 13, 2011, whether the FDCPA's statute of limitations is subject to the common-law "discovery rule."[10]

### C. Additional Factual Development After Remand

After limited discovery, it became clear that Citibank froze Plaintiff's accounts on December 13, 2011.

Citibank's records, produced pursuant to a subpoena, show that Citibank "blocked" Plaintiff's accounts and an associated debit card at 6:14 p.m. on the evening of December 13, 2011. A Citibank employee

---

[8] *Id.*

[9] Though seemingly trivial on its face, as is frequently true in cases of competing claims regarding statutes of limitation, the one-day difference was potentially significant. If Citibank froze Plaintiff's accounts on December 14, 2011, then his FDCPA claim, commenced exactly one year later, is necessarily timely. If the freeze occurred even one day earlier, however, then the statute of limitations might preclude recovery.

[10] As we explain below, under the discovery rule, "a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) (internal quotation marks omitted).

testified that after that time, Plaintiff could not withdraw funds, had only limited ability to deposit funds, and did not have access to the accounts electronically.

Plaintiff's sworn declaration and deposition testimony corroborate this account. Plaintiff averred that, on December 13, 2011, in the evening, his wife informed him that "she had a problem using [his] Citibank debit card at an [automated teller machine]."[11] Plaintiff attempted to gain access to his accounts electronically but was unable to do so because they "were not visible on-line."[12] At that point, he "concluded that [his] accounts had been frozen because the same thing had occurred . . . in 2008."[13] This realization was "extremely distressing,"[14] and by approximately 8:00 p.m. that evening, Plaintiff "thought [he] was going to have a heart attack."[15]

Notwithstanding his distress, Plaintiff acted immediately. He contacted Citibank by telephone to learn "what happened to [his] accounts."[16] A Citibank employee informed Plaintiff that his accounts had been blocked and instructed him to call the next day for more

---

[11] J.A. 176.

[12] *Id.* at 177.

[13] *Id.* at 176.

[14] *Id.*

[15] *Id.* at 299.

[16] *Id.* at 176.

7

information. Plaintiff also contacted his attorney, who represented him when Citibank erroneously froze his account in 2008, because that experience led him to believe that he "might [have] a legal problem."[17]

The next day, December 14, 2011, Plaintiff learned that Citibank had frozen his accounts pursuant to the second erroneous restraining notice sent by Houslanger on December 6, 2011.

### D. The District Court's Memorandum and Order

After discovery, Houslanger moved for summary judgment, contending once again that Plaintiff's FDCPA claim is time-barred. The District Court agreed and granted summary judgment in Houslanger's favor.[18]

*First*, the District Court found that Citibank froze Plaintiff's accounts—*i.e.*, that the alleged FDCPA violation occurred, triggering the statute of limitations—on December 13, 2011. Because Plaintiff filed suit on December 14, 2012, one year and one day later, the District Court held that Plaintiff's FDCPA claim is untimely.

*Second*, the District Court concluded that it did not need to determine whether the discovery rule applies to FDCPA claims as a general matter because the outcome in this case would be the same in any event. The evidence established that Plaintiff learned that Citibank

---

[17] *Id.* at 302.

[18] *See Benzemann v. Citibank N.A.*, No. 12 Civ. 9145 (NRB), 2018 WL 1665253, at *5–*7 (S.D.N.Y. Mar. 22, 2018).

froze his accounts on December 13, 2011, so that the date of injury and the date of discovery were the same. Accordingly, Plaintiff's claim would be time-barred even under the discovery rule.

This appeal followed.

## II.    DISCUSSION

### A. Standard of Review

We review an award of summary judgment, including on the basis of "an affirmative defense such as the statute of limitations,"[19] *de novo*, "construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences and resolving all ambiguities in [his] favor."[20] Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21]

### B. Interpreting *Benzemann I*

The parties' dispute is based principally on our construction of the FDCPA's statute of limitations in *Benzemann I*.

---

[19] *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

[20] *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019) (internal quotation mark omitted).

[21] Fed. R. Civ. P. 56(a).

As noted above, an FDCPA claim must be brought "within one year from the date on which the violation occurs."[22] We held in *Benzemann I* "that where a debt collector sends an allegedly unlawful restraining notice to a bank, the FDCPA violation does not 'occur' for purposes of [the statute of limitations] until the bank freezes the debtor's account."[23] Though this conclusion appears straightforward, we also observed that "the FDCPA violation here did not 'occur' until Citibank froze [Plaintiff]'s account because it was only then that he had a complete cause of action and *notice of the FDCPA violation*."[24]

Plaintiff makes much of this latter passage in *Benzemann I*. He contends that, as interpreted in *Benzemann I*, the FDCPA's limitations period commences only when an individual is injured by unlawful conduct *and* receives "notice of the FDCPA violation."[25] Here, under Plaintiff's theory, the statute of limitations did not begin to run until Plaintiff learned that Citibank had frozen his accounts pursuant to the unlawful restraining notice that Houslanger prepared. Plaintiff argues that, because he did not learn of the restraining notice until December 14, 2011, his FDCPA claim, which he commenced exactly one year later, is timely.

---

[22] 15 U.S.C. § 1692k(d).

[23] *Benzemann I*, 806 F.3d at 103.

[24] *Id.* at 103 (emphasis added).

[25] Pl.'s Br. 9.

We conclude that our observation regarding "notice" cannot bear the weight Plaintiff assigns to it. To the extent our decision in *Benzemann I* created any confusion, we now make clear that an FDCPA violation occurs, triggering the statute of limitations, when an individual is injured by unlawful conduct.

\* \* \*

We reject Plaintiff's position for several reasons. As an initial matter, we did not consider in *Benzemann I* the issue that Plaintiff now contends we decided. The question before us in *Benzemann I* was whether an FDCPA violation can occur, for the purposes of the statute of limitations, *before* the victim is injured. We concluded that it could not. In reaching that conclusion, we were not required to—and, we now make clear, did not—examine whether the triggering of the statute of limitations also requires "notice of the FDCPA violation." Because that issue was not before us, there is no basis for assuming that we reached it, especially in light of the otherwise clear principle we expressly described as our holding.[26]

In any event, read as a whole, *Benzemann I* makes clear that we intended to tether the commencement of the FDCPA's limitations period to the date of injury. We began by reciting the "general

---

[26] *See Columbia Broad. Sys., Inc. v. Am. Soc'y of Composers, Authors & Publishers*, 620 F.2d 930, 935 (2d Cir. 1980) ("[A]ppellate courts, endeavoring to rule beyond the precise holding of a case, normally make that intention unmistakably clear."); *United States v. Rubin*, 609 F.2d 51, 69 n.2 (2d Cir. 1979) (Friendly, J., concurring) ("A judge's power to bind is limited to the issue that is before him.").

principle of law that a cause of action accrues when conduct that invades the rights of another has caused injury."[27] We then noted that "[b]efore Citibank froze [Plaintiff]'s account, [he] had suffered no injury" and therefore "could not have sued Houslanger."[28] To avoid an "anomaly" wherein "the FDCPA's statute of limitations . . . begin[s] to run before an FDCPA plaintiff [can] file suit,"[29] we concluded that an FDCPA violation cannot occur before an individual is injured by unlawful conduct.[30] Thus, from the very beginning, our focus in *Benzemann I* was the date of Plaintiff's injury.

In addition, our instructions to the District Court refute Plaintiff's interpretation. Having determined that an FDCPA violation occurs for the purposes of the statute of limitations when a bank freezes a debtor's account, we directed the District Court to conduct further proceedings to ascertain the date of the freeze.[31] If we had concluded that an FDCPA violation could not occur until an individual received "notice of the FDCPA violation," as Plaintiff suggests, this instruction presumably would have been different. We also directed the District Court to consider whether the discovery rule

---

[27] *Benzemann I*, 806 F.3d at 101 (internal quotation marks and brackets omitted).

[28] *Id.*

[29] *Id.* at 101, 102.

[30] *Id.* at 103.

[31] *Id.*

12

applies to FDCPA claims only if it determined that Citibank froze Plaintiff's accounts on December 13, 2011.[32] This instruction is consistent with the conclusion that Plaintiff's knowledge—or lack thereof—is irrelevant in determining when an alleged FDCPA violation occurs.

Accordingly, a careful reading makes clear that we did not intend in *Benzemann I* to expand the FDCPA's statute of limitations by requiring that individuals receive "notice of the FDCPA violation."

\* \* \*

Aside from the fact that *Benzemann I* simply does not say what Plaintiff would like, there are other reasons to reject Plaintiff's proposed notice requirement. *First*, the statutory text provides no support for such a rule. We have observed that statutes of limitation "inevitably reflect[ ] a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones."[33] Thus, "strict adherence to limitation periods is the best guarantee of evenhanded administration of the law."[34] Here, strict adherence requires little imagination, since the statutory text is unambiguous: FDCPA claims must be brought "within one year from the date on which the violation

---

[32] *Id.* at 103 n.2.

[33] *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir. 1999) (internal quotation marks omitted).

[34] *Id.* (internal quotation marks omitted).

13

occurs."[35] A "violation"—"[a]n infraction or breach of the law"[36]— "occurs" when it "take[s] place."[37] It is one thing to conclude, as we did in *Benzemann I*, that a breach of the law might not take place until unlawful conduct causes an injury. But it is quite another to suggest that a breach of the law does not take place until a victim receives notice of the statutory violation. On Plaintiff's theory, if an individual never received such notice, a breach of the law never took place—no matter that the individual was in fact injured by unlawful conduct. This novel interpretation might help Plaintiff evade the FDCPA's statute of limitations, but it appears to us unsupported by the common understanding of the words "violation" and "occur."

*Second*, unlike the rule we adopted in *Benzemann I* and restate today, Plaintiff's proposal is not easily administrable. Plaintiff makes no attempt to define the contours of what constitutes sufficient "notice of the FDCPA violation" other than to suggest that, here, it means "notice of [a] [r]estraining [n]otice that violates the FDCPA."[38] But even this limitation provides only so much help. A restraining notice might violate the FDCPA for any number of reasons. Where, as here, a fundamental error is evident on the face of the restraining notice, the notice might itself provide "notice of the FDCPA violation." That will not always be the case, however. Yet Plaintiff does not identify a way

---

[35] 15 U.S.C. § 1692k(d).

[36] *Violation*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[37] *Occur*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1561 (1981).

[38] Pl.'s Br. 6.

14

to distinguish between this straightforward case and those instances in which the type of "notice" necessary to identify "the FDCPA violation" will be far less self-evident. Were we to adopt a notice requirement, the question of how much notice is enough would, we think, bedevil litigants and courts for some time to come.

*Finally*, and relatedly, Plaintiff's proposal undermines the policies that statutes of limitation serve. Among other things, limitations periods encourage putative plaintiffs to diligently prosecute their claims[39] and "promote justice by preventing surprises through plaintiffs' revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."[40] Plaintiff's rule, which incents strategic delay—not to

---

[39] *See Statute of Limitations*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("The purpose of [statutes of limitation] is to require diligent prosecution of known claims . . . ."); *see also, e.g., Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983) ("Limitations periods are intended to . . . prevent plaintiffs from sleeping on their rights."); *United States v. Wiley*, 78 U.S. 508, 513–14 (1870) (Statutes of limitation "are enacted upon the presumption that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue.").

[40] *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) (internal quotation marks and brackets omitted). *See also, e.g., Bd. of Regents v. Tomanio*, 446 U.S. 478, 487 (1980) ("[T]here comes a point at which the delay of a plaintiff in asserting a claim is sufficiently likely either to impair the accuracy of the fact-finding process or to upset settled expectations that a substantive claim will be barred without respect to whether it is meritorious."); *Bell v. Morrison*, 26 U.S. 351, 360 (1828) (Statutes of limitation are "wise and beneficial law[s]" that "afford security against stale demands, after the true state of the transaction may have been forgotten, or be incapable of explanation."); *cf.* Oliver W. Holmes, Jr., *The Path of the Law*, 10 HARV. L. REV. 457, 476–77 (1897) ("[T]he foundation of the acquisition of rights by lapse of time is to be looked for in the position of the person who gains them, not in that of

mention endless litigation concerning the sufficiency of notice—does just the opposite.

*     *     *

For these reasons, we conclude that an FDCPA violation occurs for the purposes of the one-year statute of limitations when an individual is injured by unlawful conduct. Here, Plaintiff was injured on December 13, 2011, when Citibank froze his accounts. Because Plaintiff filed suit one year and one day later, his FDCPA claim is time-barred.

## C. The "Discovery Rule"

Plaintiff also contends that his claim is timely pursuant to the common-law "discovery rule." We disagree.

Under the discovery rule, "a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation."[41] We have not had occasion to decide whether the discovery rule applies to FDCPA claims and need

---

the loser. . . . A thing which you have enjoyed and used as your own for a long time, whether property or an opinion, takes root in your being and cannot be torn away without your resenting the act and trying to defend yourself, however you came by it.").

[41] *Guilbert*, 480 F.3d at 149 (internal quotation marks omitted).

not do so here because, as the District Court recognized, Plaintiff's claim would be time-barred in any event.[42]

The Supreme Court has made clear that, under the discovery rule, "discovery of *the injury*, not discovery of the other elements of a claim, is what starts the clock."[43] This standard is plainly satisfied here. By Plaintiff's own account, he discovered the injury—that Citibank had frozen his accounts—on the same day that it occurred: December 13, 2011. Accordingly, Plaintiff's FDCPA claim is time-barred even under the discovery rule.[44]

---

[42] In concluding that the FDCPA's text does not support Plaintiff's proposed notice requirement, we do not mean to preclude the possibility that the FDCPA's statute of limitations is subject to the discovery rule. Indeed, we have previously observed that "federal court[s] *generally* employ[ ] the 'discovery rule.'" *Id.* (emphasis added). There might be reason to question this presumption. *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001) (noting that, though "lower federal courts generally apply a discovery accrual rule when a statute is silent on the issue," the Supreme Court has "not adopted that position as [its] own" (internal quotation marks omitted)). But we need not reach this issue here. Although we interpret the words "violation" and "occur" as a signal that the FDCPA's limitations period generally commences when an individual is injured by unlawful conduct, we do not discount the possibility that the discovery rule or, in appropriate circumstances, another doctrine could alter or extend the limitations period. In addition, we note that the Supreme Court has recently granted *certiorari* in an action that raises this question and might soon conclusively resolve the issue. *See Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018), *cert. granted*, 139 S. Ct. 1259 (Feb. 25, 2019) (No. 18-328).

[43] *Rotella v. Wood*, 528 U.S. 549, 555 (2000) (emphasis added).

[44] We have previously described the discovery rule as applying to both the complained-of injury and its cause. *See A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011) ("The diligence-discovery rule sets the accrual date at the time when, with reasonable diligence, the plaintiff has or . . . should have

## D. "Equitable Tolling"

Finally, Plaintiff contends that his claim is timely under the doctrine of "equitable tolling." Once again, we disagree.

As an initial matter, Plaintiff failed to raise this argument before the District Court.[45] "[A]n appellate court [generally] will not consider an issue raised for the first time on appeal."[46] Although we can exercise our discretion to do so "where necessary to avoid a manifest injustice,"[47] Plaintiff has not attempted to meet this standard.

---

discovered the critical facts of both his injury *and its cause*." (internal quotation marks omitted; emphasis added)). We need not decide today whether we can reconcile our description of the discovery rule in cases such as *A.Q.C.* with the limitation the Supreme Court expressed in *Rotella*, which we appeared to adopt in *Guilbert*. We agree with the District Court that, to the extent Plaintiff did not know the precise cause of his injury on December 13, 2011, he possessed enough information to strongly suspect that it had been caused by conduct that was legally actionable. *See Benzemann*, 2018 WL 1665253, at *6–*7 (noting Plaintiff's deposition testimony that he contacted his attorney shortly after learning his accounts were frozen because he concluded, in light of his experience in 2008, that he "might [have] a legal problem" (internal quotation marks omitted)).

[45] We reject Plaintiff's contention that he implicitly raised the issue during oral argument before the District Court on the motion to dismiss that was the subject of our decision in *Benzemann I*. Had Plaintiff in fact intended to raise equitable tolling more than three years ago, it is highly unlikely that he would have failed to do so again in opposing Houslanger's motion for summary judgment.

[46] *Spinelli v. Nat'l Football League*, 903 F.3d 185, 198 (2d Cir. 2018) (internal quotation mark omitted).

[47] *Id.* at 198–99.

In any event, Plaintiff's argument fails on the merits. As a general matter, equitable tolling "pauses the running of, or tolls, a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."[48] Assuming, for the sake of argument only, that the doctrine of equitable tolling applies to the FDCPA, there is ample reason to conclude that Plaintiff has failed to satisfy its requirements.

Plaintiff discovered that Citibank froze his accounts on December 13, 2011 and began investigating the incident that evening. By the next day, Plaintiff had gathered all the information necessary to bring an FDCPA claim. Yet, for reasons known only to Plaintiff and his counsel, Plaintiff waited just over one year to commence this action. In the circumstances, it would be difficult indeed to describe Plaintiff's pursuit of his rights as "diligent." Nor, in light of Plaintiff's ability to ascertain the necessary information in less than twenty-four hours, does it appear that an extraordinary circumstance prevented him from commencing this action in a timely fashion.

## III.   CONCLUSION

To summarize, we hold that:

(1) An FDCPA violation "occurs," for the purposes of the FDCPA's one-year statute of limitations, when an individual is injured by the alleged unlawful conduct. Because Plaintiff filed suit one year and one day after Citibank froze his

---

[48] *CTS Corp.*, 573 U.S. at 9 (internal quotation marks omitted).

19

accounts—the injury caused by the claimed FDCPA violation—his claim is time-barred.

(2) Even if the "discovery rule" applies to FDCPA claims as a general matter—an issue we do not decide—Plaintiff's claim is time-barred because he discovered his injury on the same day that it occurred.

(3) Even if Plaintiff had properly raised the doctrine of "equitable tolling" before the District Court, it would not salvage his claim because he did not diligently pursue his rights, and no extraordinary circumstance precluded him from timely commencing this action.

For the foregoing reasons, we **AFFIRM** the District Court's March 23, 2018 judgment.